[Crim. No. 1805. Second Appellate District, Division One.—August 5, 1929.]

THE PEOPLE, Respondent, v. H. WHIPPLE, Appellant.

W. E. Balcom and H. Wenzlaff for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction of the crime of escaping from an officer (sec. 107, Pen. Code) and from an order denying his motion for a new trial.

It is an admitted fact that defendant, while in the custody of the sheriff under lawful judgment of imprisonment for a misdemeanor, and while working in the prison camp of San Bernardino County, made his escape from the custody of the sheriff and from said prison camp. The sole defense offered is that the conditions existing in the camp, together with the brutal and inhumane treatment of the defendant, made his imprisonment intolerable and justified the escape.

The gist of the point made on appeal herein is that the trial court committed reversible error in instructing the jury that an excuse for the escape of defendant, founded upon any alleged insanitary conditions, or alleged harsh, brutal or inhumane treatment received by him at the hands of his custodian, would constitute no defense in the law for the commission of the offense.

In this state the common law is of no effect so far as the specification of what acts or conduct shall constitute a crime is concerned. (Sec. 6, Pen. Code; 7 Cal. Jur. 841.) In order that a public offense be committed, some statute, ordinance or regulation prior in time to the commission of the act, must denounce it; likewise with excuses or justifications—if no statutory excuse or justification apply as to the commission of the particular offense, neither the common law nor the so-called "unwritten law" may legally supply it. As an illustration, section 187 of the Penal Code defines the crime of murder as the unlawful killing of a human being, with malice aforethought; section 195 lays down the law as to when or under what circumstances a homicide is excusable, and by sections 196, 197 and 198, of the same code, the conditions are specified which must exist before a homicide is justifiable. Although the "unwritten law" sometimes may be regarded by jurors as sufficient, and so accepted by them, in the law the principle is unknown and unrecognizable. The legal ex-

cuse or legal justification for murder may be found only in the statute. Nor, ordinarily, at least, will the "law of necessity" prove sufficient as a legal excuse. For example, take the extreme case of a man burglarizing a bakery for the sole purpose of procuring bread for his starving babes. Even in such dire circumstances, so far as the particular offense is concerned, the law itself is powerless to accept the excuse. Nor yet will good faith, or the fact that the end accomplished is rightful, avail as a defense. The probation law (sec. 1203, Pen. Code) is broad and comprehensive in its scope. The relief of a defendant who, by reason of mitigating circumstances, seeks exemption from punishment for the commission of a crime by him must rest upon the liberal terms of that statutè and the wise discretion of the trial court. In the case of *People* v. *Beggs,* 178 Cal. 79 [172 Pac. 152], it was held that one who obtained payment from a thief of the value of property stolen by him, by threatening him with an accusation and prosecution thereon unless he made such payment, was guilty of the crime of extortion, without regard to the exercise of good faith in exacting the amount justly due.

 Although authority exists to the effect that, generally speaking, absolute necessity will excuse the commission of a criminal offense (*Chesapeake & O. R. Co.* v. *Commonwealth,* 119 Ky. 519 [84 S. W. 566]; *Commonwealth* v. *Brooks,* 99 Mass. 434); so far as the crime of escaping from a jail is concerned, the authorities are in practical accord in holding that ordinary adverse circumstances will not present such a condition as will support a legal excuse for effecting an escape. In 1 Hale, P. C., 611 (1736), it is said that "If a prison be fired by accident, and there be a necessity to break prison to save his life, this excuseth the felony." The sole authority for such declaration of the common law is Coke's Second Institutes, 590, where, without the citation of either judicial or other authority in its support, the statement occurs that if "A man imprisoned for petit larceny or for killing of a man *se defendendo,* or by misfortune, and break prison, it is no felony, because he shall not for the first offense *subire judicium vitae vel membri. Et sic de similibus.*" But whatever may be the common law with reference to escape, where either *"se defendendo,"* misfortune, or "first of-

fence'' is or may be invoked as a defense to the accusation for which imprisonment has resulted, so far as the decisions by the courts of sister states are concerned, neither the insanitary condition of the jail (*State* v. *Davis,* 14 Nev. 439 [33 Am. Rep. 563]), fear of violence from third persons (*Hinkle* v. *Commonwealth,* (Ky.) 66 S. W. 816), nor unmerited punishment at the hands of the custodian (*Johnson* v. *State,* 122 Ga. 172 [50 S. E. 65]), will present a situation which in the law may be accepted as an excuse for violation of the statute. In the case of *State* v. *Cahill,* 196 Iowa, 486 [194 N. W. 191], the defendant was charged with escaping from a solitary cell of the penitentiary, rather than from the prison itself. He presented the defense that while in solitary confinement his food consisted of an insufficient quantity of bread and water; that the cell was infested with bugs, worms and vermin; that the toilet was so out of repair that when it was flushed the water ran out upon the floor; that the cell was without a chair, bed or other reasonable comforts. He further claimed that he had been suffering from lung trouble, and that the cell was rendered unhealthful by the conditions existing and the manner in which it was kept. In deciding the particular question of whether such conditions would constitute a defense to the crime of escape, the court, in part, said: ''The quantity of bread furnished appellant was inadequate, if the confinement were protracted over many days; but neither this nor the other matters complained of afforded him the slightest justification for escaping from the cell, or attempting to secure his liberty from confinement.''

The case of *State* v. *Davis, supra,* was an ''escape'' case in which, in the absence of a proper foundation by defendant that he had exhausted the lawful means of relief in his power before attempting to effect his escape, it was held not error in the trial court to reject evidence as to ''what was the condition of the jail . . . as to whether it was a filthy, unwholesome and loathsome place, full of vermin and uncleanliness. . . . '' In passing upon the question there presented, among other things, the court said: ''A person confined by the law should be delivered by the law; and no other means can be justified in any case, until the officers in charge, and the law, refuse him relief; and then the evidence of the necessity must be clear and conclusive, and the act

must proceed no further than the emergency absolutely requires. (Bishop on C. L., vol. 1, sec. 352.) ''

It is manifest that to allow a prisoner to decide whether the conditions justify him in attempting to escape would be destructive of the necessary discipline which must be maintained in any well-ordered prison. As was said in one case: ''The escape or attempt to escape of a prisoner, whether from a local jail or a state prison, tends to the general disruption of the prison discipline, and, as often such conduct by prisoners has caused, may be the cause of the slaying or serious wounding of officers or guards of the prison from which the escape or attempt to escape is made. Hence, such an act by persons legally confined in prisons or jails before their terms of imprisonment have expired is justly regarded as among the most flagrant violations of the rules governing prison discipline.'' (*In re Haines*, 68 Cal. App. 522, 527 [229 Pac. 984].) Generally speaking, when a man has been lawfully convicted of a crime, and a judgment of imprisonment has been regularly entered against him, it becomes his duty to submit to the penalty. Unquestionably, it is the duty of the state and of its officers to accord to the prisoner such safety and humane treatment as may be consistent with the safekeeping of the prisoner. It is, unfortunately, possible for the conditions of imprisonment to be so unwholesome as to seriously imperil the health and life of the prisoner by exposure to infection and disease, and unhappily it is possible for prison guards to subject prisoners to abuses and serious physical injury unjustified by any disciplinary need. However, a prisoner who escapes for any such reason does so at his peril.

In the instant case—aside from the principle that what constitutes a crime is necessarily based upon statute, and so must positive law excuse or justify it—the record fails to disclose any attempt on the part of defendant to show that before escaping, he had, in good faith or at all, endeavored to be relieved by lawful means from any alleged improper irregularities or practices which he claimed were present in the matter of his confinement. The trial court committed no error in giving to the jury the instruction to which reference has been had. However, it is with very great reluctance that we admit that, under practically all of the authorities, the foregoing opinion states the established

266

law. The testimony of the defendant, although contradicted by that of other witnesses, might have been believed by the jury. And if the facts were as stated by the defendant, he was subjected to brutal treatment of extreme atrocity. In a remote mountain camp, far from the sheriff's office, what relief could he obtain by telling his custodian that he wanted to see the sheriff? If the defense could be admitted at all, it should not be conditioned upon the making of a plainly useless request. The function of the court is to declare the law as it is, and we are not authorized to usurp the place of the legislature, which has the power to make laws, and the duty to make just laws.

The judgment and the order denying the motion for a new trial are affirmed.

Conrey, P. J., and York, J., concurred.