**People of the State of Illinois, Plaintiff-Appellee, v. John D. Lighting, Defendant-Appellant.**

Gen. No. 50,748.

First District, Second Division.

May 9, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and David B. Selig, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of murder and was sentenced to 15 to 20 years in the penitentiary. On this appeal he maintains the State failed to rebut his affirmative defense of compulsion and that the trial court erred in denying his pretrial motion to discover certain information allegedly in the possession of the State.

Defendant was indicted with Willie Saddle for the murder of Isabelle Simms on October 2, 1960. In January of 1961, defendant was found to be mentally defective and unable to cooperate with counsel, and was confined to the Illinois State Security Hospital. Shortly thereafter a nolle prosequi was entered on the indictment against Willie Saddle. On November 19, 1962, defendant was declared sane and able to cooperate with counsel. This trial was had in January of 1965.

Defendant testified he arrived in Chicago from his home in Mississippi some two weeks before he was arrested for the crime. At that time he was 16 years of

age and had a fourth-grade education. Shortly after his arrival in Chicago defendant met Willie Saddle and at approximately 6:00 on the evening of October 1, 1960, Saddle requested defendant to accompany him to a girl's house. At 12:00 or 12:30 a. m. defendant and Saddle proceeded to Isabelle Simms' barbecue shop on the south side of Chicago.

Defendant testified that Saddle took him into an alley near the shop and told him to go into the shop and ask the woman for money. Defendant refused but went into the shop, purchased a bottle of soda pop, drank it and walked out. Defendant testified that Saddle then threatened his life with a gun if he did not return to the barbecue shop and demand money from Mrs. Simms. Saddle placed a grey coat on defendant's shoulders, the right pocket of which contained a revolver. Defendant entered the shop and demanded money from Mrs. Simms with which demand she complied. As defendant was leaving the shop Mrs. Simms called to him, drew a gun and began firing at him. Defendant returned the fire and Mrs. Simms was mortally wounded. Defendant fled the scene accompanied by Saddle and was apprehended by the police in the vicinity of the barbecue shop a short time later.

Mrs. Anna Watts, employed by Mrs. Simms as a cook in the barbecue shop on the night of the shooting, testified that defendant entered the premises at 12:00 or 12:30 a. m., purchased a bottle of soda pop and left. Defendant returned to the shop three hours later and stood near the jukebox with his hand in his pocket. When Mrs. Simms received money from a customer and was about to put it into the cash register, defendant drew his gun and demanded the money as well as a gun which Mrs. Simms kept in the cash register. Mrs. Watts testified that defendant stated, "Give me that gun. I don't want to kill you." Mrs. Simms and defendant then ex-

changed gunfire after which Mrs. Simms fell to the floor and defendant fled the premises.

Defendant first maintains he advanced an affirmative defense of compulsion in that Saddle, by means of threats against his life, coerced and forced him into committing the robbery which resulted in the death of Mrs. Simms, and that the State failed to rebut his defense. Ill Rev Stats 1959, c 38, par 597 (presently par 7–11, c 38). Defendant's argument presupposes the evidence in the record made out the defense of compulsion. On the contrary, the evidence was against the defense raised by defendant. Mrs. Watts testified defendant entered the premises alone about three hours after his first visit that morning and lingered near the jukebox for a short time pretending to make a selection from the music. He waited until a customer paid his bill, at which time he turned from the jukebox with his gun drawn and demanded money from Mrs. Simms. He also demanded the gun which Mrs. Simms kept in the cash register. After defendant received some money he told her "that is enough" and was on his way out of the premises when the gunfire was exchanged.

The trial court expressly stated that Mrs. Watts was an alert and credible witness and obviously chose to believe her account of the incident. People v. Reaves, 24 Ill2d 380, 382, 183 NE2d 169. Under this evidence defendant was not acting under coercion or compulsion when he shot Mrs. Simms. He was out of Saddle's presence for some length of time prior thereto and had ample opportunity to withdraw from the robbery if he chose to do so. Defendant lingered at the jukebox for a time, waiting for a customer to pay his bill before demanding money from Mrs. Simms. Furthermore, the evidence shows defendant was predisposed to use the gun in his possession when he demanded Mrs. Simms' gun during the course of the robbery, stating, "I don't want to kill

you." Finally, defendant was on his way out of the barbecue shop when the shooting occurred. All of these facts show defendant was not acting under compulsion when he shot Mrs. Simms.

■ Assuming arguendo defendant was forced to perpetrate the robbery due to threats upon his life by Willie Saddle, the evidence shows the claimed compulsion had nothing to do with the shooting. The testimony of both defendant and Mrs. Watts shows defendant had already committed the robbery and was on his way out of the barbecue shop when the exchange of gunfire took place. The existence of the threat or coercion which defendant claims to have existed is doubtful for the reason that defendant was out of Saddle's presence for a good length of time prior to the shooting. See Baxter v. People, 3 Gilm (8 Ill) 368, 383. The record is devoid of any evidence that defendant was acting under compulsion at the time he shot and killed Mrs. Simms.

■ Defendant's other contention is that the trial court erred in denying his motion for information allegedly in the possession of the State. The scope of the motion was general and all-encompassing. The motion requested the Grand Jury minutes with regard to statements allegedly made by defendant and Saddle, memoranda of State interviews with several persons concerning the shooting, reports of police and detective investigations and statements received thereby, information pertaining to the arrest of Willie Saddle, and "any other items, photographs, laboratory reports, statements and documents which will assist your petitioner in preparing his defense. . . ." Under the circumstances we feel the trial court properly denied defendant's motion.

■ Defendant cites the case of Brady v. Maryland, 373 US 83, in support of his position that he was entitled to receive the matters requested in his motion. The Brady case is not in point for the reason that defendant

specifically requested the confession of a codefendant which was thereafter purposely withheld by the prosecuting attorney. Such is not the situation here. The State is not required to produce a defendant's witnesses or to create his defenses. United States v. Di Gregorio, 148 F Supp 526, 528.

For these reasons the judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and BRYANT, J., concur.