PEOPLE v HARMON

1. Criminal Law—Defenses—Duress—Question of Fact.

To establish the defense of duress a defendant must show that the violation of law for which he stands charged was necessitated by threatening conduct of another which resulted in the defendant harboring a reasonable fear of imminent or immediate death or serious bodily harm; the issue of whether the alleged danger was immediate or imminent is, in all but the clearest cases, to be decided by the trier of fact taking into consideration all the surrounding circumstances.

2. Criminal Law—Escape from Prison—Defenses—Duress—Homosexual Attacks.

A trial judge erred in not submitting the defense of duress to a charge of prison escape to the jury, where the testimony adduced at the trial established that the defendant had been beaten by groups of fellow inmates in attempts to force him to submit to homosexual demands, the defendant's testimony was corroborated by a witness to the beatings, and the defendant alleged that he escaped from the institution because of his fear of continued attacks.

Appeal from Ionia, Leo B. Bebeau, J. Submitted Division 3 March 6, 1974, at Grand Rapids. (Docket No. 16696.) Decided May 30, 1974. Leave to appeal applied for.

Terry Harmon was convicted of escape from prison. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Deregonski,* Solicitor General, *Walter M. Marks,*

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law § 100.
   Coercion, compulsion, or duress as defense to criminal prosecution, 40 ALR2d 908
[2] 21 Am Jur 2d, Criminal Law § 140.

Prosecuting Attorney, and *Aloysius J. Lynch,* Special Assistant Attorney General, Prosecuting Attorneys Appellate Service *(Donald Ubell,* Director), for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendant.

Before: T. M. BURNS, P. J., and V. J. BRENNAN and BASHARA, JJ.

V. J. BRENNAN, J. Defendant, Terry Lee Harmon, appeals from his conviction by a jury in the Ionia County Circuit Court of escaping from prison (MCLA 750.193; MSA 28.390). Several issues are presented by defendant for our consideration and urged as requiring reversal of his conviction. In light of our disposition of the first issue, we find it unnecessary to reach defendant's additional contentions.

Defendant concedes that he was lawfully committed to the Michigan reformatory at Ionia and that he escaped therefrom on June 29, 1972. Defendant contends, however, as he did in the court below, that his departure from prison was done under duress in order to avoid threatened homosexual attacks by other inmates. Although testimony supportive of such a claim was presented in the court below, the trial judge instructed the jury that, even if they did find that defendant fled to avoid homosexual attacks, such a claim would not serve as a defense to a charge of prison escape. It is defendant's contention that the trial judge erred reversibly in giving such an instruction. We agree. The time has come when we can no longer close our eyes to the growing problem of institutional gang rapes in our prison system. Although a person sentenced to serve a period of time in prison

for the commission of a crime gives up certain of his rights, "it has never been held that upon entering a prison one is entirely bereft of all of his civil rights and forfeits every protection of the law." *Sewell v Pegelow,* 291 F2d 196, 198 (CA 4, 1961). Indeed, the State has a duty to assure inmate safety. See *Holt v Sarver,* 300 F Supp 825 (ED Ark, 1969), *supplemented by* 309 F Supp 362 (ED Ark, 1970), *aff'd,* 442 F2d 304 (CA8, 1971). The persons in charge of our prisons and jails are obliged to take reasonable precautions in order to provide a place of confinement where a prisoner is safe from gang rapes and beatings by fellow inmates, safe from guard ignorance of pleas for help and safe from intentional placement into situations where an assault of one type or another is likely to result. If our prison system fails to live up to its responsibilities in this regard we should not, indirectly, countenance such a failure by precluding the presentation of a defense based on those facts.

In the case at bar defendant, an 18-year-old male, was sentenced to serve a term of imprisonment in the penal institution at Ionia. He was originally confined within the regular prison facilities but later transferred to the dormitory system from which he later escaped. Defendant testified that during the first two weeks he was at the institution he requested to be transferred to the segregation ward because he was afraid of being pressed for sex. This request was denied, however, and he remained in the main facility until June of 1972, when he was transferred to the dormitory system.

Defendant testified that in a conversation with Mr. Robert Mayer, a prison social worker, he expressed his fear of being sent to the dormitory

because of the "things" he heard went on out there. Mr. Mayer testified that he had had a conversation with defendant prior to the transfer and that defendant expressed certain apprehensions about going to the dormitory. Mr. Mayer did not, however, remember defendant specifically bringing up his fear of homosexual attacks.

Defendant further testified that within a few days of his transfer to the dormitory, he was accosted by seven or eight inmates who demanded sex from him. He refused their demands and the group of inmates then began to beat and kick him. This beating continued until another inmate, Carl Shepherd, entered the room. Shepherd testified at the trial and corroborated defendant's story to the extent that a beating occurred and that it ceased upon his entrance to the room.

On June 28, 1972, defendant was again approached by a group of inmates who started hitting him and saying they would continue to do so until he gave them some sex. The group dispersed, however, without achieving their expressed goal. The next night defendant escaped.

At his trial defendant stated that he did not report these episodes or attempt to get back in the main facility because he was afraid of reprisals by his attackers and other prisoners. Deputy Warden Dale Folz testified that defendant's fears in this regard were not unfounded. He stated that any prisoner who reported on another prisoner would certainly have a "problem". He also testified that there definitely was a homosexual problem at the institution and that the person generally pressed for sex was one who had a youthful appearance.

The prosecution argues that the presentation of the above facts at trial did not warrant or require any instruction on duress. We disagree. To estab-

lish the defense of duress it is necessary that a defendant show that the violation of law for which he stands charged was necessitated by threatening conduct of another which resulted in defendant harboring a reasonable fear of imminent or immediate death or serious bodily harm. See *People v Merhige,* 212 Mich 601; 180 NW 418 (1920). Although it is true, as the prosecution contends, that a mere threat of future injury is not enough to serve as such a defense, the issue of whether the alleged danger was immediate or imminent is, in all but the clearest cases, to be decided by the trier of fact taking into consideration all the surrounding circumstances, including the defendant's opportunity and ability to avoid the feared harm. The facts in the instant case were more than sufficient to require the submission of the defense of duress to the jury in the appropriate manner. See *People v Field,* 28 Mich App 476; 184 NW2d 551 (1970). The instant case was not a situation where a defense of duress was sought to be established by a defendant through testimony of his generalized fear of homosexual attacks. Testimony adduced at trial established that defendant was attacked on two occasions by a group of inmates who sought to force him to be their sexual object and that when he refused he was beaten. His testimony in this regard was corroborated, at least in part, by that of Carl Shepherd who witnessed one of the beatings. Under these circumstances, and in light of the fact that a homosexual problem was stated to exist at the institution, we find that the trial judge erred in not submitting the defense of duress to the jury.

The prosecution also argues that a decision of another panel of this Court, *People v Noble,* 18 Mich App 300; 170 NW2d 916 (1969), is fatal to

defendant's argument in this regard. In *Noble* it was held that the fact that a defendant escaped from a work camp to avoid homosexual attacks would not serve to negate the existence of the intent required to commit the offense of prison escape and that the defendant therein could not argue that he escaped as a result of an irresistible impulse because he failed to file the four-day notice of an insanity defense required by MCLA 768.20; MSA 28.1043. The *Noble* Court also expressed the fear that if this Court allowed a defense based on the fear of homosexual attacks to be interposed against a charge of prison escape it might invite a "rash of escapes, all rationalized by unverifiable tales of sexual assault". *People v Noble, supra,* at 303; 170 NW2d at 918. We do not consider this to be the necessary result of our decision. First, it is to be remembered that simply because an escapee alleges that he escaped to avoid homosexual attacks will not suffice to prevent a conviction. The defense, as outlined above, must be established by competent evidence in a trial where the testimony of witnesses is subjected to the scrutiny of the fact-finder who, in the course of determining the true facts of the case, would properly consider the credibility of the various witnesses. It is not our function in deciding this case to judge the veracity or claims of future prisoners who might maintain that their escape was necessitated by such indignities. The credibility to be accorded such tales lies solely within the province of the fact-finder and is to be determined within the facts of each case as it arises. Secondly, our decision may well produce a result entirely opposite to that feared by the *Noble* Court. If the conditions of our penal institutions have reached the point where the only recourse to free one's self from unwanted personal attacks is to flee, then

any improvements made in our prisons with respect to assuring the personal safety of the inmates could only serve to eliminate from the ranks of escapees those who do so solely in an effort to protect themselves. The result, therefore, might well be fewer prison escapes rather than more.

Human nature being what it is, defendants who have escaped from prison for reasons unconnected with those presented here will undoubtedly argue that they did so because of homosexual attacks. These claims, however, will be judged within the framework of the fact-finding process where the traditional safeguards for determining the truth of a tale will be applied. To us this is extremely more desirable than relegating the actual victims of such attacks to years more of the same treatment where no workable safeguards are employed to protect their safety.

For the foregoing reasons we decline to follow the *Noble* Court insofar as it suggests that this Court is unable to allow the application of established defenses by prison inmates who escape to avoid homosexual attacks. While it is obvious that penal reform by the Legislature is the best solution to this difficult problem, we should not, because of that fact, preclude a defendant from presenting available defenses in the courts of this state.

Accordingly, defendant's conviction is reversed and the case remanded for a new trial.

All concurred.