THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BUFORD ADCOCK, Defendant-Appellant.

(No. 74-168; ▮▮▮▮▮▮▮▮

Third District—June 25, 1975.

*Rehearing denied July 29, 1975.*

James Geis and Mark Burkhalter, both of State Appellate Defender's Office, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet (F. Stewart Merdian, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from a conviction for armed robbery in a jury trial in the Circuit Court of Will County, following which defendant was sentenced to a term of 15 to 25 years in the penitentiary. Only two issues

are raised on appeal in this court: (1) that the trial court erred in refusing defendant's tendered instruction explaining the affirmative defense of compulsion, after what defendant contends was sufficient evidence to raise such defense had been presented to the jury; and (2) that the 15-year minimum sentence imposed by the trial court is excessive and should be reduced.

From the record in this case it appears that on March 7, 1973, defendant in company with a man named Youngblood and another named Thorn, were in Youngblood's automobile, when Youngblood drew a weapon on Thorn and forced Thorn to participate in a robbery of a nearby tavern. When the robbery was completed, the trio left Chicago with the stated intention of driving to Kentucky. While Youngblood was driving, defendant Adcock guarded Thorn constantly, holding a weapon to Thorn's neck. During this period, Youngblood, who testified at the trial, stated that he was extremely intoxicated from liquor and other drugs and threatened to shoot the defendant if he continued to guard Thorn with the weapon. Youngblood exhibited erratic behavior when he also, in anger, threw some of defendant's clothing from the moving automobile. Youngblood indicated that much of his behavior during this period was irrational.

Shortly after the trio had left Chicago, there was a blowout on one of the automobile tires of the vehicle occupied by the trio. After pulling to the shoulder of the road, Youngblood flagged down a truck operated by a man named Keene who offered to take Youngblood to the nearest service station. Youngblood drew a weapon on Keene, led him from the truck and forced him to lie face down in a roadside ditch. Neither Thorn nor defendant Adcock were present immediately when Youngblood first threatened Keene, and neither initially accompanied Youngblood to the ditch. After Keene had been forced to the ditch, both Thorn and defendant Adcock approached Youngblood. Defendant said that his purpose in doing so was to assure that there would be no violence. Youngblood threatened to shoot Thorn if he did not immediately return to the Keene truck. Defendant returned with Thorn and stated he did so because he feared for his safety. At the trial, defendant Adcock also stated that he drove away with Youngblood in the Keene truck because he feared he would be shot if he refused. Defendant was thereafter arrested and charged with armed robbery.

Prior to the jury deliberations, defendant tendered the Illinois Pattern Jury Instruction (IPI) on the affirmative defense of compulsion (IPI Criminal No. 24.21). The court refused the tender of such instruction and stated that the evidence lacked any specific threat to defendant Adcock at the time of the Keene robbery. Following a hearing in aggravation and mitigation, defendant was sentenced as we have indicated.

On the issue of compulsion, it is provided by statute (Ill. Rev. Stat. 1973, ch. 38, § 7—11(a)), which codifies the affirmative defense of compulsion, that:

"A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct."

Since compulsion is an affirmative defense (Ill. Rev. Stat. 1973, ch. 38, § 7—14), the burden is on a defendant to raise the issue by presenting "some evidence thereon" (Ill. Rev. Stat. 1973, ch. 38, § 3—2(a)). Once the issue has been sufficiently raised, the State is required to disprove, beyond a reasonable doubt, the existence of the defense. (Ill. Rev. Stat. 1973, ch. 38, § 3—2(b).) It is indicated in *People v. Brown*, 132 Ill.App. 2d 875, 271 N.E.2d 395, that once the affirmative defense is raised and "some evidence" is presented which supports that defense, it is error to refuse to instruct the jury on such affirmative defense. See also *People v. Khamis*, 411 Ill. 46, 103 N.E.2d 133; *People v. Kalpak*, 10 Ill.2d 411, 140 N.E.2d 726, where it is stated that very slight evidence would justify giving an instruction.

■■ It is clear from the cases that the reviewing court is not authorized to weigh the evidence upon the question of whether or not compulsion is shown but must determine whether or not the issue was sufficiently raised to justify such instruction. The only inquiry is whether there is "some evidence" to support that defense.

In *People v. Redmond*, 59 Ill.2d 328, 320 N.E.2d 321, the Illinois Supreme Court held that the quantum of evidence necessary to raise an affirmative defense for the purpose of requiring the State to disprove the issue was that the evidence must be sufficient to raise an issue of fact for the jury, creating a reasonable doubt as to defendant's guilt. The court specifically held that any lesser showing would not be sufficient to raise an affirmative defense. Also, in *People v. Carpentier*, 20 Ill.App.3d 1024, 314 N.E.2d 647, our court has held that unless the evidence before the trial court is so clear and convincing as to permit the court to find as a matter of law there is no affirmative defense (in that case—entrapment) the factual issue must be determined by the jury with proper instruction as to the law applicable. Defendant seeks to distinguish the *Redmond* case on the ground that the issue in that case was whether defendant had presented sufficient evidence to require the prosecution to disprove the matter beyond a reasonable doubt, whereas the issue before us in this case is whether defendant presented sufficient evidence to warrant an instruction.

■■ It is against the standard to which we have referred that evidence of compulsion is to be measured. The record in this case reveals that a short time prior to the armed robbery, Youngblood threatened to shoot both Thorn and the defendant. Youngblood alone first forced Keene from the truck at gunpoint and Adcock testified that he joined Youngblood and Keene thereafter to prevent violence. An argument between Youngblood and defendant resulted and Youngblood threatened Thorn with violence. Defendant stated that he left the ditch area because he believed he would be shot if he remained there. There was evidence that Adcock also ordered Keene to the ditch and made him lie down on his stomach. He stated that the only reason he told Keene to lie down in the ditch was to save his life. There was also some evidence that Adcock told his companions before trial that he would tell the court that this was the reason for his action. The issue before the court, therefore, is whether from these facts developed in the case, there was sufficient evidence to establish the existence of defendant's belief that he was in imminent danger of great bodily harm and whether such belief was reasonable. Even though a defendant could be mistaken in his belief, so long as the fear of great bodily harm is reasonable, he could be within the protection of the principle announced with respect to compulsion. See Committee Comments, Ill. Ann. Stat., ch. 38, § 7—11, at 432 (Smith-Hurd 1972).

■■ The evidence as presented, while not establishing the defense of compulsion as a matter of law, appears to be sufficient to authorize the giving of the instruction. Arguably, the facts could be considered by the jury as reasonably causing defendant Adcock to fear for his safety and great bodily harm. The question on this issue would, therefore, be one for the jury. We agree that if we were to be asked to determine the issue in the light of the compulsion instruction, as jurors, we would probably reject the defense. It is not contended by defendant that the evidence establishes the defense of compulsion as a matter of law, but he merely contends that there was sufficient evidence to require that the issue be submitted to the jury and that the jury be so instructed. We believe that this principle required that the trial court give the instruction on compulsion. Since such instruction was not given, the court was in error and defendant is entitled to a new trial.

The judgment and sentence of the Circuit Court of Will County in this cause is, therefore, reversed, and this cause is remanded to such court for a new trial.

Reversed and remanded.

STENGEL and BARRY, JJ., concur.