THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANCIS UNGER, Defendant-Appellant.

(No. 73-14;

Third District—November 28, 1975.

STENGEL, J., dissenting.

Cirricione, Block & Krockey, of Joliet (Vincent Cerri, of counsel), for appellant.

Martin Rudman, State's Attorney, of Joliet (Rodney Lechwar, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Francis Unger appeals from a conviction by the Will County Circuit Court, following a jury trial, of the crime of escape (Ill. Rev. Stat. 1971, ch. 108, § 121). On appeal in this court, he alleges that there was error in the giving and refusal of certain instructions and in the admission into evidence of certain portions of an interview with him shortly after he was arrested.

Defendant, a 22-year-old full-blooded Crete Indian, arrived at Stateville Penitentiary in Joliet in late December 1971. He was serving a term of 1 to 3 years imposed following a guilty plea to a theft charge in Ogle County.

In the course of the trial, defendant Unger testified that at some time during the first two months of his imprisonment, while he was working in the clothing room, he was threatened by an inmate who possessed a 6-inch knife and defendant was told he would be required to engage in homosexual activity with the inmate. Defendant requested and received a transfer to the minimum security honor farm where, one week later, on March 2, 1972, he was beaten and forcibly sexually assaulted by a gang of prisoners. In his testimony he named three of the assailants. He stated that he did not tell the authorities about the incident because he was told he would be killed if he did so and was afraid he would be killed. Several days following the attack, on March 7, 1972, he received a phone call in the evening while working at the dairy farm. The caller (whose voice he did not recognize) informed him that he would be killed that evening as the caller had heard that defendant had gone to

the authorities about the sexual assault and the beating. After receiving the call, Unger walked off the dairy farm. He was apprehended two days later in a motel room at St. Charles, Illinois. He was still wearing his prison clothes. He stated in his testimony that he left the honor farm in fear of his life and intended to return to the institution. Unger was first tried on the charge of escape in a trial that resulted in a hung jury. He was convicted after a second trial, following a 5-hour jury deliberation before a guilty verdict was reached. He was thereafter sentenced to a term of 3 to 9 years in the penitentiary, to be served consecutively to the remainder of the theft term (as provided by statute).

In the cause from which this appeal is taken, the trial court gave the following instruction (No. 9) submitted by the State over defense objections:

> "The reasons, if any, given for the alleged escape are immaterial and not to be considered by you as in any way justifying or excusing, if there were in fact such reasons."

Defendant argues that the submission of this instruction of the jury was tantamount to directing a verdict for the State; that it was a direction to the jury to disregard relevant evidence pertaining to the issue of intent and the credibility of the witnesses; and, also, that it cast doubt on the credibility of defendant himself. Defendant also assigns error on the court's refusal to give instructions on the defenses of necessity and compulsion. (See Ill. Rev. Stat. 1973, ch. 38, §§ 7—11, 7—13.) We recognize that it is an established rule that a defendant is entitled to have a jury consider any legally recognized defense which is supported by some evidence in the record, and that he is entitled to have the jury instructed not only on his theory of the case, but on the law applicable to any state of facts which the jury might properly find to have been proven. Only very slight evidence is necessary to justify the appropriate instruction. See *City of Chicago v. Mayer*, 56 Ill.2d 366, 370, 308 N.E.2d 601 (1974); *People v. Stombaugh*, 52 Ill.2d 130, 138, 284 N.E.2d 640 (1972); *People v. Adcock*, 29 Ill.App.3d 917, 331 N.E.2d 573 (3rd Dist. 1975).

The State cites the case of *People v. Richards*, 269 Cal.App.2d 768, 75 Cal. Rptr. 597 (1969), to justify the giving of the Instruction No. 9 referred to. The court, however, in the California case, pointed out that the reasons for the alleged escape in that case were immaterial and not to be considered by the jury for the reason that Richards felt that he was doing too much time and wanted to go to his mother's house and get a lawyer to see if something could be done. The California court in that case specifically noted at 269 Cal.App.2d 768, 778, 75 Cal. Rptr. 597, 604:

"This is not a case where a prisoner departed from the limits of his custody while pursued by those who would take his life because he 'snitched,' or by those who sought by force and violence to have him submit to sodomy."

The California court there expressly found that the *Richards* case was not a case of the type we have before us, where defendant Unger had alleged that his life had been threatened and that he had been beaten and forced to submit to sexual acts. Apparently under the California precedent, the "reasons" assigned for the escape in the instant case would have been found to be relevant by that court.

The affirmative defense of compulsion exists where a person commits a crime "under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believes death or great bodily harm will be inflicted upon him if he does not perform such conduct." (Ill. Rev. Stat. 1973, ch. 38, § 7—11.) The defense of necessity is defined: "Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." Ill. Rev. Stat. 1973, ch. 38, § 7—13.

■■ Obviously, inmates in a penitentiary should not be permitted to escape by assigning reasons which they tailor to suit their own whims. We cannot, however, say that as a matter of law, an escape could never be justified under the statutes referred to. According to defendant's story, he was young and not a particularly strong man, he was heterosexual, and was beaten and forced to submit to homosexual acts. While obviously there were other avenues open to defendant of a more legal nature, such as appealing to the authorities rather than escaping, he may very well have felt so threatened as to feel that such an appeal would be futile and that he would be killed or suffer great bodily harm. It was clear from the testimony of the State's witnesses that homosexual activities occurred in the prison, including sexual assaults on unwilling inmates (and even upon the prison doctor) and that there were "gangs" of inmates perpetrating such assaults. The prison authorities apparently have not been able to provide complete security to prisoners.

■■ On the basis of the record, therefore, the Instruction No. 9 given by the court, which told the jury that the reasons, if any, given for the alleged escape are immaterial and not to be considered by the jury as in any way justifying or excusing the escape, if there were in fact such reasons, was improper. The jury was thus told in substance that they could disregard completely the reasons assigned by defendant for es-

caping and his contention that he escaped for the purpose of saving his life and intended to return. The fact that the case was a close one is apparent from the circumstance that the first time the case was tried, it resulted in a hung jury, and thereafter the jury required a 5-hour period of deliberation before returning a verdict of guilty. We should make the cautionary observation that excuses for an escape must necessarily be viewed with great care and unsupported or fanciful assertions would not be sufficient to establish a defense to the charge of escape. A defendant, however, even if in prison, should be afforded the opportunity to establish his defense and proper instructions should be given on such issue, based on the record in the trial court.

This case involves an issue which is becoming increasingly significant by reason of the apparent inability of prison authorities to control the actions of gangs of inmates who are criminally assaulting other inmates with sexual assaults and other acts of violence, as indicated in 1975 U. Ill. L.F. 271, in a note analyzing the case of *People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal. Rptr. 110 (1974). The caption in the note recites that "California court holds the defense of necessity available to prison escapees." The note examines the entire issue of escape from prison by inmates who assert that they were forced to escape to avoid being assaulted by other inmates. Alternative statutory provisions in some States use the word "duress" rather than "compulsion" in addition to "necessity."

In the *Lovercamp* case, which was decided after the *Richards* case herein referred to, two female inmates were approached by lesbian groups on several occasions and told to submit to homosexual acts or be beaten. They asserted that they feared for their lives and escaped but were caught just outside the prison. The trial court in that case rejected the offer of proof concerning the reasons for escape and convicted the defendants of escape. The appellate court first examined at some length the history of the defenses to the crime of escape. After discussing *People v. Whipple*, 100 Cal.App. 261, 279 P. 1008 (1929), and the *Richards* case, the court examined three out-of-State decisions, including the case of *People v. Harmon*, 53 Mich. App. 482, 220 N.W.2d 212 (1974).

The *Harmon* case referred to is clearly a precedent for reversal in the case now before our court. In *Harmon*, the defendant escaped after being attacked and threatened by inmates on several occasions, and his defense was similarly kept from the jury by the trial court. On appeal, the Michigan Appellate Court reversed and found sufficient facts to allow defendant to have his defense submitted to the jury, even though he had not attempted to go to the authorities for fear of reprisal from fellow inmates.

■■ In the *Lovercamp* case to which we have referred, the court pointed out that one who justifiably escapes to avoid death or bodily injury may not then go on his merry way, but must rather "use reasonable efforts to render himself again to the custody of the law enforcement agency at the first available opportunity." (43 Ill.App.3d 823, 831, 118 Cal. Rptr. 110, 115.) The *Lovercamp* court then set up the following conditions for applicability of the defenses of compulsion and necessity:

(1) a specific threat of death, forcible sexual attack or serious bodily harm in the immediate future;

(2) no time for complaint to the authorities or a showing that such complaint would have been futile;

(3) no time to resort to the courts;

(4) no use of force or violence towards prison personnel or other 'innocent' persons during the escape; and

(5) immediate report to the authorities when the defendant reaches a position of safety.

In the *Lovercamp* case the court concluded that the trial judge erred in not allowing the defense to be submitted to the jury. The court noted that defendants were faced with threats of forcible sexual assault at least in the immediate future, and that there was a history of ignored complaints in the prison. There was not enough time, realistically to appeal to the courts effectively and there was no violence used in the escape. Finally, the girl prisoners were captured just outside the walls when they made their escape. The burden would thus be placed upon the defendants to convince the jury that they intended to get in touch with the authorities once they were safe. The case was remanded for a new trial.

■■ We see a great deal of merit in the suggestions made by the *Lovercamp* court. Our case is somewhat stronger, from standpoint of threats, since defendant Unger testified that he was actually threatened with death in a phone call. The immediacy requirement is satisfied. We do not believe that a "gun to the head immediacy" is essential to establish either compulsion or necessity. To require that a prisoner be immediately pursued by armed inmates is unrealistic if this is made a condition to justify escape to save a prisoner's life. Unger was told that he would be dead before the evening was out. Unger used no force in effecting his own escape. There would, therefore, appear to be a jury question as to Unger's intent to report to the authorities after the escape or to return to prison, as he asserts he was going to do.

■■ While Unger made some statements, when he was examined, which might be inconsistent with his position as to the reason for the

escape, the entire issue of the reasons asserted should have been presented to the jury for its determination as to whether his escape was justified. We do not indicate by this opinion that Unger was absolutely justified in his escape on the basis of the record before us, but we do indicate that he was entitled to have a jury consider his defense on the record made as presented in the trial court. Had the jury not been advised that they should disregard any of the reasons given for the escape, then we might have come to a different conclusion, since the issue of whether defendant's escape was justified could have been considered by the jury, in the light of the evidence as to what he had done, and whether the jury believed that he intended to return to the prison and get in touch with the authorities. As stated in *People v. Harmon,* 53 Mich. App. 482, 484, 220 N.W.2d 212, 213 (1974):

> "* * * the State has a duty to assure inmate safety. * * *
> If our prison system fails to live up to its responsibilities in this regard we should not, indirectly, countenance such a failure by precluding the presentation of a defense based on those facts."

We emphasize again that the courts must view assertions made by prisoners to justify an escape, with great reserve, and that the burden should be clearly upon the prisoner to establish a rational justification for the escape.

We have not overlooked the case of *People v. Davis,* 16 Ill.App.3d 846, 848, 306 N.E.2d 897 (3rd Dist. 1974). This case, which was decided in our court, is distinguishable from the instant case because in the *Davis* case defendant made no claim that there was imminent danger to his life. In that case, also, it was noted that defendant was apprehended only after more than a month following his escape, when he was in the State of Alabama. In our case, defendant Unger was found two days later wearing his prison clothes in a motel room near the prison. In another recent case, *People v. Terry,* 30 Ill.App.3d 713, 332 N.E.2d 765 (5th Dist. 1975), there was likewise also no showing of an immediate death threat, since defendant was away from the prison on furlough when he escaped. His reason for failing to return to prison in the *Terry* case was because of information he had given to the authorities *after* he had escaped and been captured. Terry got as far away as Georgia.

■■ A contention is also made that the trial court committed reversible error when it admitted into evidence and permitted to be played to the jury, a tape-recorded interview with defendant prior to trial. Since no objection was made to such evidence, and since the record shows that defense counsel actually invited the use of such tape-recorded interview,

there was no reversible error in the use thereof under such circumstances.

In view of the record, the giving of the State's Instruction No. 9 was reversible error. For the reasons stated, the judgment of the Circuit Court of Will County is, therefore, reversed and this cause is remanded to such court for a new trial.

Reversed and remanded.

BARRY, J., concurs.

Mr. JUSTICE STENGEL, dissenting:

I must respectfully dissent from the majority opinion because I disagree with the majority view concerning the issues of compulsion and necessity. Although courts have long recognized the defenses of duress and necessity, they have been reluctant to allow these defenses in cases involving prison escapes. They have uniformly held that intolerable, unwholesome and inhumane prison conditions do not justify an escape from prison. "Until [*People v. Lovercamp*, 43 Cal.App.3d 823, 118 Cal. Rptr. 110 (1974)], no reviewing court had ever upheld a defense of necessity in ordinary adverse situations such as threats from fellow inmates." 1975 U. Ill. L.F. 271, 275.

Compulsion as a defense exists when a person performs what would otherwise be a criminal act under threat of serious injury or death. Although there is no case directly on point, it seems implicit in the few escape cases where compulsion has been raised that this defense would be available in appropriate circumstances. However, compulsion involves two aspects: an impending, imminent, present threat coupled with a demand that the person perform some criminal act in order to avoid the consequences of the threat.

Illinois courts have recognized these requirements. In *People ex rel. Rusch v. Rivlin*, 277 Ill.App. 183 (1st Dist. 1934), the court stated:

> "'The compulsion which will excuse a criminal act, however, must be present, imminent, and impending, and of such a nature as to induce a well grounded apprehension of death or serious bodily harm if the act is not done. A threat of future injury is not enough. * * *'" 277 Ill.App. 183, 196.

In *People v. Lighting*, 83 Ill.App.2d 430, 228 N.E.2d 104 (1st Dist. 1967), where the defendant was charged with murder following an attempted robbery, he claimed compulsion because another person had told defendant that defendant would be killed *if* he did not perform the robbery. The court stated that this may be a defense for the robbery,

but not the murder, since defendant was no longer in that person's presence when he committed the murder. This case illustrates both requirements: the threats must be immediate and imminent and the person making the threat must demand that defendant perform the criminal act with which defendant is charged. *People v. Adcock*, 29 Ill.App.3d 917, 331 N.E.2d 573 (3rd Dist. 1975), is similar to *Lighting*. In *Adcock*, this court held that a compulsion instruction should have been given where there was some evidence that defendant participated in a robbery because he feared he would be killed if he didn't. *People v. Wester*, 337 Cal.App.2d 232, 46 Cal. Rptr. 699 (1965), is an escape case which clearly illustrates these principles. The court there stated that compulsion is available as a defense *only if there is a demand that the defendant escape*, coupled with threats of harm for noncompliance with the demand.

The majority opinion statement "We do not believe that a gun to the head immediacy is essential to establish either compulsion or necessity," is contrary to what this court decided in *People v. Davis*, 16 Ill.App.3d 846, 306 N.E.2d 897 (3rd Dist. 1974). There defendant claimed that he had escaped because of threats on his life and also because he had been refused medical treatment. This court held that defendant was not entitled to an instruction on compulsion, stating:

> "In the instant case, defendant did not maintain that there was an immediate or imminent threat of danger for his life nor did he maintain that the one imposing the threats demand he commit the prohibited act of escape. In fact defendant gave a second reason for his escape, that being the lack of medical care in the prison. All of these facts indicate defendant was not under compulsion as defined by the statute." (16 Ill.App.3d 846, 848.)

This interpretation of the compulsion statute in *Davis* was recently affirmed in another escape case, *People v. Terry*, 30 Ill.App.3d 713, 332 N.E.2d 765 (5th Dist. 1975).

There are certain facts in evidence which the majority has failed to consider in reaching its decision. The conditions for permitting the defenses of compulsion and necessity imposed in *Lovercamp* have not been satisfied in this case. Although defendant had "time for complaint to the authorities," he did not make a complaint. Furthermore, defendant had another reason for his escape. He stated, "I never mentioned any assaults" because "I had the intent on leaving for the reasons of attaining publicity." (Abstract of record 59-61.) The fifth factor in *Lovercamp*, that the escapee make "immediate report to the authorities when he reaches a position of safety," has likewise not been met. The defendant here stole a truck nine hours after his escape and then drove to Chicago. Later he

drove to St. Charles and used the phone to call friends in Canada but did not attempt to contact prison authorities. Abstract of record 63.

Since, under the facts of this case, the defense of compulsion or necessity could not, as a matter of law, apply in the instant case, I do not believe Instruction No. 9 was improper. In addition an instruction on compulsion would be erroneous at any trial where these facts are in evidence.

For the reasons stated, I must dissent from this opinion.