(No. 48218.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. FRANCIS UNGER, Appellee.

*Opinion filed April 5, 1977.*

UNDERWOOD, J., dissenting.

William J. Scott, Attorney General, of Springfield, and Martin Rudman, State's Attorney, of Joliet (James B. Zagel, Jayne A. Carr, and Steven J. Rosenberg, Assistant Attorneys General, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and G. Joseph Weller, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Defendant, Francis Unger, was charged with the crime

of escape (Ill. Rev. Stat. 1971, ch. 108, par. 121), and was convicted following a jury trial before the circuit court of Will County. Defendant was sentenced to a term of three to nine years to be served consecutively to the remainder of the sentence for which he was imprisoned at the time of the escape. The conviction was reversed upon appeal and the cause was remanded for a new trial over the dissent of one justice. (33 Ill. App. 3d 770.) We granted leave to appeal and now affirm the judgment of the appellate court.

At the time of the present offense, the defendant was confined at the Illinois State Penitentiary in Joliet, Illinois. Defendant was serving a one- to three-year term as a consequence of a conviction for auto theft in Ogle County. Defendant began serving this sentence in December of 1971. On February 23, 1972, the defendant was transferred to the prison's minimum security, honor farm. It is undisputed that on March 7, 1972, the defendant walked off the honor farm. Defendant was apprehended two days later in a motel room in St. Charles, Illinois.

At trial, defendant testified that prior to his transfer to the honor farm he had been threatened by a fellow inmate. This inmate allegedly brandished a six-inch knife in an attempt to force defendant to engage in homosexual activities. Defendant was 22 years old and weighed approximately 155 pounds. He testified that he did not report the incident to the proper authorities due to fear of retaliation. Defendant also testified that he is not a particularly good fighter.

Defendant stated that after his transfer to the honor farm he was assaulted and sexually molested by three inmates, and he named the assailants at trial. The attack allegedly occurred on March 2, 1972, and from that date until his escape defendant received additional threats from inmates he did not know. On March 7, 1972, the date of the escape, defendant testified that he received a call on an institution telephone. Defendant testified that the caller,

whose voice he did not recognize, threatened him with death because the caller had heard that defendant had reported the assault to prison authorities. Defendant said that he left the honor farm to save his life and that he planned to return once he found someone who could help him. None of these incidents were reported to the prison officials. As mentioned, defendant was apprehended two days later still dressed in his prison clothes.

The State introduced prior statements made by the defendant which cast some doubt on his true reasons for leaving the prison farm. In these statements, defendant indicated that he was motivated by a desire for publicity concerning the sentence on his original conviction, which he deemed to be unfair, as well as fear of physical abuse and death.

Defendant's first trial for escape resulted in a hung jury. The jury in the second trial returned its verdict after a five-hour deliberation. The following instruction (People's Instruction No. 9) was given by the trial court over defendant's objection.

> "The reasons, if any, given for the alleged escape are immaterial and not to be considered by you as in any way justifying or excusing, if there were in fact such reasons."

The appellate court majority found that the giving of People's Instruction No. 9 was reversible error. (33 Ill. App. 3d 770, 777.) Two instructions which were tendered by defendant but refused by the trial court are also germane to this appeal. Defendant's instructions Nos. 1 and 3 were predicated upon the affirmative defenses of compulsion and necessity. (Ill. Rev. Stat. 1971, ch. 38, pars. 7—11 (compulsion), 7—13 (necessity).) Defendant's instructions Nos. 1 and 3 read as follows:

> "It is a defense to the charge made against the Defendant that he left the Honor Farm of the Illinois State Penitentiary by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than

the injury which might reasonably result from his own conduct."

"It is a defense to the charge made against the Defendant that he acted under the compulsion of threat or menace of the imminent infliction of death or great bodily harm, if he reasonably believed death or great bodily harm would be inflicted upon him if he did not perform the conduct with which he is charged."

The principal issue in the present appeal is whether it was error for the court to instruct the jury that it must disregard the reasons given for defendant's escape and to conversely refuse to instruct the jury on the statutory defenses of compulsion and necessity. In the appellate court the defendant successfully asserted that the giving of People's Instruction No. 9 was tantamount to directing a verdict against the defendant. The State contends that, under the facts and circumstances of this case, the defenses of compulsion and necessity are, as a matter of law, unavailable to defendant.

Both the People and the defendant are entitled to appropriate instructions which present their theories of the case to the jury when and if such theories are supported by the evidence. (*City of Chicago v. Mayer* (1974), 56 Ill. 2d 366, 370; *People v. Kalpak* (1957), 10 Ill. 2d 411, 425; *People v. Khamis* (1951), 411 Ill. 46, 53.) Section 3–2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 3–2) provides that a defendant, to raise the issue of an affirmative defense, must present "some evidence" thereon. Therefore, if the defenses asserted were available to the defendant, he was entitled to an instruction on these theories if "some evidence" was introduced to support them. Conversely, it was error to give People's Instruction No. 9, which required the jury to disregard the reasons for the escape.

Proper resolution of this appeal requires some preliminary remarks concerning the law of compulsion and necessity as applied to prison escape situations. Traditionally, the courts have been reluctant to permit the defenses

of compulsion and necessity to be relied upon by escapees. (See 1975 U. Ill. L.F. 271, 274-75 & n.23, and the cases cited therein.) This reluctance appears to have been primarily grounded upon considerations of public policy. Several recent decisions, however, have recognized the applicability of the compulsion and necessity defenses to prison escapes. In *People v. Harmon* (1974), 53 Mich. App. 482, 220 N.W.2d 212, the defense of duress was held to apply in a case where the defendant alleged that he escaped in order to avoid repeated homosexual attacks from fellow inmates. In *People v. Lovercamp* (1974), 43 Cal. App. 3d 823, 118 Cal. Rptr. 110, a limited defense of necessity was held to be available to two defendants whose escapes were allegedly motivated by fear of homosexual attacks.

As illustrated by *Harmon* and *Lovercamp,* different courts have reached similar results in escape cases involving sexual abuse, though the question was analyzed under different defense theories. A certain degree of confusion has resulted from the recurring practice on the part of the courts to use the terms "compulsion" (duress) and "necessity" interchangeably, though the defenses are theoretically distinct. (Gardner, *The Defense of Necessity and the Right to Escape from Prison—A Step Towards Incarceration Free From Sexual Assault,* 49 S. Cal. L. Rev. 110, 115 (1975); Note, *Duress—Defense to Escape,* 3 Am. J. Crim. L. 331, 332 (1975).) It has been suggested that the major distinction between the two defenses is that the source of the coercive power in cases of compulsion is from human beings, whereas in situations of necessity the pressure on the defendant arises from the forces of nature. (LaFave and Scott, Handbook on Criminal Law 381 (1972).) Also, as noted in the dissenting opinion in the appellate court, the defense of compulsion generally requires an impending, imminent threat of great bodily harm together with a demand that the person perform the specific criminal act for which he is eventually charged.

(33 Ill. App. 3d 770, 777 (Stengel, J., dissenting); *People v. Terry* (1975), 30 Ill. App. 3d 713; *People v. Davis* (1974), 16 Ill. App. 3d 846.) Additionally, where the defense of compulsion is successfully asserted the coercing party is guilty of the crime. LaFave and Scott, Handbook on Criminal Law 380 (1972).

It is readily discernible that prison escapes induced by fear of homosexual assaults and accompanying physical reprisals do not conveniently fit within the traditional ambits of either the compulsion or the necessity defense. However, it has been suggested that such cases could best be analyzed in terms of necessity. (LaFave and Scott, Handbook on Criminal Law 381-82 n.2 (1972).) One commentator has stated that the relevant consideration should be whether the defendant chose the lesser of two evils, in which case the defense of necessity would apply, or whether he was unable to exercise a free choice at all, in which event compulsion would be the appropriate defense. Gardner, *The Defense of Necessity and the Right to Escape from Prison—A Step Towards Incarceration Free From Sexual Assault,* 49 S. Cal. L. Rev. 110, 133 (1975).

In our view, the defense of necessity, as defined by our statute (Ill. Rev. Stat. 1971, ch. 38, par. 7—13), is the appropriate defense in the present case. In a very real sense, the defendant here was not deprived of his free will by the threat of imminent physical harm which, according to the Committee Comments, appears to be the intended interpretation of the defense of compulsion as set out in section 7—11 of the Criminal Code. (Ill. Ann. Stat., ch. 38, par. 7—11, Committee Comments, at 423-33 (Smith-Hurd 1972).) Rather, if defendant's testimony is believed, he was forced to choose between two admitted evils by the situation which arose from actual and threatened homosexual assaults and fears of reprisal. Though the defense of compulsion would be applicable in the unlikely event that a prisoner was coerced by the threat of imminent physical harm to perform the specific act of escape, no such

situation is involved in the present appeal. We, therefore, turn to a consideration of whether the evidence presented by the defendant justified the giving of an instruction on the defense of necessity.

The defendant's testimony was clearly sufficient to raise the affirmative defense of necessity. That defense is defined by statute (Ill. Rev. Stat. 1971, ch. 38, par. 7–13):

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct."

Defendant testified that he was subjected to threats of forced homosexual activity and that, on one occasion, the threatened abuse was carried out. He also testified that he was physically incapable of defending himself and that he feared greater harm would result from a report to the authorities. Defendant further testified that just prior to his escape he was told that he was going to be killed, and that he therefore fled the honor farm in order to save his life. Though the State's evidence cast a doubt upon the defendant's motives for escape and upon the reasonableness of defendant's assertion that such conduct was necessary, the defendant was entitled to have the jury consider the defense on the basis of his testimony. It is clear that defendant introduced some evidence to support the defense of necessity. As previously mentioned, that is sufficient to justify the giving of an appropriate instruction.

The State, however, would have us apply a more stringent test to prison escape situations. The State refers to the *Lovercamp* decision, where only a limited necessity defense was recognized. In *Lovercamp,* it was held that the defense of necessity need be submitted to the jury only where five conditions had been met. (43 Cal. App. 3d 823, 831, 118 Cal. Rptr. 110, 115.) Those conditions are:

"(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;

(3) There is no time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." 43 Cal. App. 823, 831-32, 118 Cal. Rptr. 110, 115.

The State correctly points out that the defendant never informed the authorities of his situation and failed to report immediately after securing a position of safety. Therefore, it is contended that, under the authority of *Lovercamp,* defendant is not entitled to a necessity instruction. We agree with the State and with the court in *Lovercamp* that the above conditions are relevant factors to be used in assessing claims of necessity. We cannot say, however, that the existence of each condition is, as a matter of law, necessary to establish a meritorious necessity defense.

The preconditions set forth in *Lovercamp* are, in our view, matters which go to the weight and credibility of the defendant's testimony. The rule is well settled that a court will not weigh the evidence where the question is whether an instruction is justified. (*People v. Kalpak* (1957), 10 Ill. 2d 411, 425.) The absence of one or more of the elements listed in *Lovercamp* would not necessarily mandate a finding that the defendant could not assert the defense of necessity.

By way of example, in the present case defendant did

not report to the authorities immediately after securing his safety. In fact, defendant never voluntarily turned himself in to the proper officials. However, defendant testified that he intended to return to the prison upon obtaining legal advice from an attorney and claimed that he was attempting to get money from friends to pay for such counsel. Regardless of our opinion as to the believability of defendant's tale, this testimony, if accepted by the jury, would have negated any negative inference which would arise from defendant's failure to report to proper authorities after the escape. The absence of one of the *Lovercamp* preconditions does not alone disprove the claim of necessity and should not, therefore, automatically preclude an instruction on the defense. We therefore reject the contention that the availability of the necessity defense be expressly conditioned upon the elements set forth in *Lovercamp.*

In conclusion, we hold that under the facts and circumstances of the present case the defendant was entitled to submit his defense of necessity to the jury. It was, therefore, reversible error to give People's Instruction No. 9 to the jury and to refuse to give an appropriate instruction defining the defense of necessity, such as the instruction tendered by the defendant. In light of our disposition of this appeal, we need not consider contentions raised by defendant as to the propriety of his sentence.

Therefore, the judgment of the appellate court is affirmed, and the cause is remanded to the circuit court of Will County for futher proceedings in accordance with the views expressed herein.

*Affirmed and remanded.*

MR. JUSTICE UNDERWOOD, dissenting:

My disagreement with my colleagues stems from an uneasy feeling that their unconditional recognition of

necessity as a defense to the charge of escape carries with it the seeds of future troubles. Unless narrowly circumscribed, the availability of that defense could encourage potential escapees, disrupt prison discipline, and could even result in injury to prison guards, police or private citizens. (*People v. Whipple* (1929), 100 Cal. App. 261, 279 P. 1008.) For these reasons courts have been quite reluctant to honor the defenses of duress, necessity or compulsion in prison escapes, and, until recent years, they were uniformly held insufficient to justify escapes. As Mr. Justice Stengel noted in his dissenting opinion in the appellate court: " 'Until [*People v. Lovercamp*, 43 Cal. App. 3d 823, 118 Cal. Rptr. 110 (1974)], no reviewing court had ever upheld a defense of necessity in ordinary adverse situations such as threats from fellow inmates.' 1975 U. Ill. L.F. 271, 275." 33 Ill. App. 3d 770, 777.

*Lovercamp,* however, imposed well-defined conditions which must be met before a defendant is entitled to have the defense of necessity submitted to the jury:

"*** (1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;

(3) There is no time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat." 43 Cal. App. 3d 823, 831-32, 118 Cal. Rptr. 110, 115.

I am not totally insensitive to the sometimes brutal and unwholesome problems faced by prison inmates, and

the frequency of sexually motivated assaults. Prisoner complaints to unconcerned or understaffed prison administrations may produce little real help to a prisoner or may actually increase the hazard from fellow inmates of whose conduct complaint has been made. Consequently, and until adequate prison personnel and facilities are realities, I agree that a necessity defense should be recognized. The interests of society are better served, however, if the use of that defense in prison-escape cases is confined within well-defined boundaries such as those in *Lovercamp*. In that form it will be available, but with limitations precluding its wholesale use.

It is undisputed that defendant here did not meet those conditions. He did not complain to the authorities on this occasion even though, following an earlier threat and demand by a fellow inmate that defendant submit to homosexual activity, defendant had requested and been granted a transfer to the minimum security honor farm. Nor did he immediately report to the authorities when he had reached a place of safety. Rather, he stole a truck some nine hours after his escape, drove to Chicago, and later drove to St. Charles, using the telephone to call friends in Canada. This conduct, coupled with his admitted intent to leave in order to gain publicity for what he considered an unfair sentence, severely strain the credibility of his testimony regarding his intention to return to the prison.

Since defendant's conduct does not comply with conditions such as those in *Lovercamp* which, in my judgment, should be required before a necessity defense may be considered by a jury, I believe the trial court did not err in its instructions.

I would accordingly reverse the appellate court and affirm the judgment of the trial court.