THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
HENRY M. JANIK, Defendant-Appellant.

Second District No. 2—86—1065

Opinion filed January 29, 1988.

REINHARD, J., dissenting in part.

Connolly & Ekl, P.C., of Clarendon Hills, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Following a jury trial, defendant, Henry M. Janik, was found guilty of driving under the influence of alcohol (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2)) and leaving the scene of an accident (Ill. Rev. Stat. 1985, ch. 95½, par. 11—401(a)), but not guilty of driving under the influence of alcohol while blood-alcohol concentration was .10 or more (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(1)). He was sentenced to a one-year term of probation, with conditions, including 150 days in the Du Page County jail.

Defendant raises the following issues on appeal: whether the evidence was sufficient to support a finding of guilty beyond a reasonable doubt of driving under the influence of alcohol and of leaving the scene of an accident involving death; and whether the trial court's refusal to give instructions regarding the defense of necessity was error requiring reversal and a new trial of the offense of leaving the scene of an accident.

On Sunday, December 30, 1984, between approximately noon and 6 p.m., defendant was at the Avalanche Pub watching football play-off games. Defendant testified that he had $3 or $4 with him and that,

over the course of the afternoon, he consumed five eight-ounce draft beers. Although he went to the tavern alone, at some time after the first game had ended defendant spoke with two friends who later testified that they had not noticed anything unusual in defendant's speech, manner or balance and that, in their opinion, he was not under the influence of alcohol.

Defendant left the bar at approximately 6:15 p.m. and drove west on Army Trail Road. At that time, Deputy Dean Wildermuth of the Du Page County sheriff's department was parked in the center eastbound lane of traffic on Army Trail Road and was gesturing to the victim, who was crossing the westbound lanes of traffic, to get off the road. The victim continued to cross the street and defendant's vehicle struck him. Officer Steven Gabriel of the Village of Carol Stream police department also observed the accident from a nearby parking lot and testified that the weather was cold, clear and dry. Additionally, it was a dark rural area, but there were streetlights at the intersections on either side of the accident site, and there was also some additional lighting from a shopping center located at the east intersection. From where Gabriel was, it looked like the victim was wearing dark clothing when, in fact, he was wearing a tan jacket and grey pants. Neither before nor after the impact did defendant's car swerve or take evasive action, nor did his brake lights appear to go on. Gabriel stated that defendant was not driving erratically.

Defendant's car hit the victim with such impact that defendant's windshield shattered, leaving a hole on the right passenger side, the victim's tied tennis shoes were knocked off, and his wallet and a glove, which were later found in the front passenger seat of defendant's car, apparently flew threw the hole caused by the impact. Defendant testified that he felt an explosion and his windshield was shattered. He thought that someone had thrown something at him and he had to get out of there and go home to call the police. He testified that he had not observed a person in the street, that there was no place to stop or call for assistance at the scene, and that his house was only four blocks away. He arrived home in 35 or 40 seconds and told his wife that someone had thrown something at him and they had to call the police.

After the accident, Deputy Wildermuth followed defendant with his emergency lights activated. Defendant was 600 to 800 feet ahead of Wildermuth, who remained behind defendant for four blocks until defendant turned into his driveway. This took about a minute. Defendant testified that he had not noticed Wildermuth parked on Army Trail Road nor did he notice any emergency lights behind him on his

way home. As defendant pulled into his driveway, his wife noticed the smashed windshield and, when she went outside, she saw that defendant was pale and visibly shaken. She did not notice an odor of alcohol. Defendant told her that something was thrown at the windshield.

At approximately the same time, Wildermuth pulled into the driveway. At his request, defendant produced his license. Wildermuth noticed that defendant was in a state of mild shock and asked defendant if he knew what he had hit. Defendant told him that he thought it was a mailbox. Wildermuth then informed defendant that it was a pedestrian. Wildermuth proceeded to recover the victim's wallet from defendant's car. Both Wildermuth and defendant's wife thought defendant had no difficulty walking down the driveway and getting into the squad car. In his wife's opinion, defendant was not under the influence of alcohol. Wildermuth, however, stated that he had no opinion one way or the other.

Wildermuth returned defendant to the scene of the accident, where arresting Officer Carol Lussky of the Village of Hanover Park police department spoke with defendant in her squad car. Defendant had no difficulty and needed no assistance in moving from one vehicle to the other. Lussky asked defendant what he thought had happened, and he responded that he saw something in the road and tried, unsuccessfully, to avoid hitting it. When asked what he thought it was, defendant said he thought it was a mailbox.

During this conversation, Lussky detected a moderate odor of alcohol and asked defendant if he had been drinking. Defendant then told her that he had been drinking at a bar down the road. Lussky testified that, based on the facts that defendant was involved in an accident with a pedestrian and told her he had hit a mailbox, that even after being told it was a person, he still thought it was a mailbox, that defendant's eyes were watery, that there was a moderate odor of alcohol, that he stated he had been drinking and that he had no knowledge of the victim's wallet recovered from his car, she advised defendant that he was under arrest for driving under the influence of alcohol. Lussky then administered field sobriety tests at the scene in front of the ambulance and next to her car, both of which had their emergency lights activated. In performing the heel-to-toe test, defendant stepped from the line twice to regain his balance and in turning, wavered and was slow in making his turn. Defendant touched the bridge of his nose with one hand and his upper lip with the other, when performing the finger-to-nose test. Defendant's performance of the field sobriety tests confirmed Lussky's opinion that defendant was intoxicated.

Thereafter, Lussky took defendant to the hospital where he voluntarily submitted to having his blood tested for alcohol content. On their way to the hospital, defendant stated that he wanted his blood tested because he did not believe that he was under the influence. It is undisputed that defendant's speech was coherent, understandable and clear and that he was polite and cooperative at all times relevant hereto.

Veronica Rotterman, a chemist employed by the State of Illinois Department of Public Health, testified as an expert witness to the alcohol concentration of defendant's blood. She stated that based on the gas chromatography method she used, *i.e.*, the direct liquid injection method, defendant's blood had an alcohol concentration of .165.

Dr. Christopher Long, chief toxicologist of the Bureau of Forensic Science, of the Illinois State Police in Springfield, Illinois, testified for defendant that the printout of defendant's blood-alcohol level was not scientifically accurate or reliable, that the standards Ms. Rotterman used were improper, that there was some indication of operator error, and that the machine used to run the direct injection test, which has been replaced by the head space gas chromatograph, should have been tested after every five sample runs, but was not tested at all while Ms. Rotterman ran approximately 30 samples through the machine.

 Initially, we address defendant's contention that the trial court erred in refusing to instruct the jury on the affirmative defense of necessity. Defendant offered two instructions regarding the affirmative defense of necessity, one defining the defense, Illinois Pattern Jury Instructions, Criminal, No. 24—25.22 (2d ed. 1981) (hereinafter IPI Criminal 2d), and the other including the defense as an element that the State had to disprove beyond a reasonable doubt, as set forth in the issues instruction, on the charge of leaving the scene of an accident. He argues that the justification for giving the necessity defense instruction was the evidence of his belief that he hit a mailbox in the roadway or that it was thrown at his car and that he left the scene to call the police because he feared for his own safety.

Section 7—13 of the Criminal Code of 1961 provides:

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." (Ill. Rev. Stat. 1985, ch. 38, par. 7—13.)

Unless the State's evidence raises the issue of an affirmative defense of necessity, a defendant must present "some evidence" thereon so as

to raise the alleged defense. (See Ill. Rev. Stat. 1985, ch. 38, par. 3—2(a); *People v. Unger* (1977), 66 Ill. 2d 333, 338, 362 N.E.2d 319.) If the defense of necessity was available to defendant, he was entitled to an instruction on this theory provided "some evidence" was introduced to support it. (See *Unger*, 66 Ill. 2d at 338, 362 N.E.2d at 321.) We note that necessity is viewed as involving the choice between two admitted evils (*Unger*, 66 Ill. 2d at 340, 362 N.E.2d at 322), where other optional courses of action are unavailable. *People v. Krizka* (1980), 92 Ill. App. 3d 288, 290, 416 N.E.2d 36.

In his brief, defendant argues that his defense of necessity was based on his belief that he hit a mailbox in the roadway or that it was thrown at his car and that he left the scene to call the police because he feared for his own safety. Defendant testified relating to this issue, as follows:

"Q. Now, Mr. Janik, as you passed the traffic signal on County Farm Road at Army Trail, what were the lighting conditions like?

A. It was very dark. There are no lights out there at all.

Q. And was there any improvement in that general area in December of 1984 on the south side of Army Trial Road at County Farm?

A. There was another shopping center under construction.

Q. That shopping center was not occupied at that time; isn't that correct?

A. Not that I know of, no.

Q. Isn't it also a fact it was a shell, a brick shell?

A. Yes, sir.

Q. So, there were no lights emanating from that shopping center on the south side of Army Trial Road?

A. No, sir.

Q. Now, what if anything occurred of an unusual nature as you crossed County Farm Road and proceeded westbound down Army Trial?

A. As I crossed County Farm Road about—I don't know—400 feet west of the intersection or so, there was a sudden explosion. My windshield was shattered on the right side of my vehicle.

Q. And what if anything did you determine at that time?

A. That somebody had thrown something at me and that I had to get out of there and go home and call the police.

Q. Did you observe a person at any time immediately before or after the impact in the area in front of your vehicle?

A. No, sir.

Q. As you proceeded westbound, did you notice any emergency lights behind you?

A. No, sir.

Q. And can you tell us, Mr. Janik, where you live and lived on December 30th, 1984, in relation to the point of impact out on the pavement there.

A. It's about four blocks away or so.

Q. And can you tell the ladies and gentlemen of the jury the duration and time between the point of impact and what it would take to drive to your front door?

A. Thirty to forty-five seconds.

Q. Mr. Janik, what if anything in the way of a store or homes existed on either side of Army Trial Road between the point of impact and the street that you turned off of to go to your home?

A. There are none. There is nothing.

Q. Would there have been any improvements there that you could have stopped and gotten aid or assistance?

A. No, sir.

* * *

Q. What if anything did [your wife] say to you and what did you say to her?

A. I stepped out of the car immediately and told her that somebody had thrown something at me and that we had to call the police.

Q. What if anything did she say at that time?

A. She just pointed out at that time—she says that a squad car was pulling up."

The supreme court has recognized that both the State and defendant are entitled to appropriate instructions which present their theories of the case to the jury when and if such theories are supported by the evidence. (*People v. Unger* (1977), 66 Ill. 2d 333, 338, 362 N.E.2d 319, 321; see *City of Chicago v. Mayer* (1974), 56 Ill. 2d 366, 308 N.E.2d 601.) Section 3—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 3—2) provides that in order for a defendant to raise the issue of an affirmative defense, he must present "some evidence" thereon. "Therefore, if the defenses asserted were available to the defendant, he was entitled to an instruction on these theories if 'some evidence' was introduced to support them." (*Unger*, 66 Ill. 2d at 338, 362 N.E.2d at 321.) As a reviewing court, our task is not to weigh the evidence upon the question of whether necessity is

shown; rather, it is to determine whether the issue was sufficiently raised to justify such instruction. See *People v. Adcock* (1975), 29 Ill. App. 3d 917, 919, 331 N.E.2d 573, 575.

The elements of the affirmative defense of necessity are: (1) that the person claiming the defense was without blame in occasioning or developing the situation, and (2) that this person reasonably believed that his conduct was necessary to avoid a greater public or private injury than that which might reasonably have resulted from his conduct. (See Ill. Rev. Stat. 1985, ch. 38, par. 7—13; see also *People v. Perez* (1981), 97 Ill. App. 3d 278, 280, 422 N.E.2d 945, 947.) Unlike *Perez*, the record here reflects that there was "some evidence" which would satisfy these requirements. In *Perez*, the court held that there was no indication that defendant was without blame in occasioning the situation which caused him to carry a loaded revolver into Chicago. There, defendant was involved in an ongoing feud with gang members and stopped his vehicle to engage in a gunfight. (*Perez*, 97 Ill. App. 3d at 280-81, 422 N.E.2d at 947.) With regard to the second element, the *Perez* court held that otherwise illegal conduct is justified only where it constitutes the sole reasonable alternative available under the circumstances. Thus, because *Perez* had a more reasonable alternative available to him, *i.e.*, avoiding the gang members who were threatening him, the court could not find any evidence to support the second element.

Such is not the case here. Defendant did produce some evidence that he was without blame in occasioning or developing the situation. The record reflects that as defendant drove in a dark area along Army Trial Road within the speed limit, he did not notice anything unusual until there was a sudden explosion and his windshield shattered. Defendant thought someone had thrown something at his car. There clearly was "some evidence" in these circumstances that defendant was without blame for developing the situation which was brought about by the victim, who stepped onto the road in front of defendant's car. The impact caused the sudden explosion noticed by defendant and was the first indication he had of a problem.

■ There was also "some evidence" that defendant reasonably believed that leaving the scene was necessary to avoid greater private injury than that which would have resulted if he had stopped after the impact. Again, defendant testified that he thought someone had thrown something at his car and, whatever it was, the impact was significant enough to shatter his windshield. Further, defendant testified that he had not seen anything unusual and that there was no place in the area for him to stop and call for assistance. Defendant

was not aware of any emergency vehicles in the area, and his home was just a short distance away. He testified that, upon impact, his sole concern was to get home and call the police and, once at home, he reiterated this concern to his wife. This testimony suggests that going to his home to call the police was possibly the sole reasonable alternative under the circumstances. Defendant does not contend that the evidence establishes the defense of necessity as a matter of law, but argues that there was sufficient evidence to require that the issue be submitted to the jury and that it be so instructed. The jury might, or might not, consider necessity a proper defense in these circumstances or that defendant acted reasonably in leaving the scene of the accident for less than one minute to call the police from his home rather than stopping on the dark road to determine who broke the windshield. Thus, because defendant produced "some evidence" to support both elements of the affirmative defense of necessity, we find that the trial court erred in refusing to instruct the jury in that regard.

Defendant also contends that he was not proved guilty beyond a reasonable doubt of driving while under the influence of alcohol (DUI). Defendant argues that Ms. Rotterman's testimony that his blood had an alcohol concentration of .165 was discredited and that the remaining testimony offered by the State was insufficient to support a conviction. He argues that there was no evidence of erratic driving, that Deputy Wildermuth and Officer Gabriel were unable to form an opinion on his intoxication, that the nurse who took the blood sample did not notice any symptoms of intoxication or odor of alcohol, and that Officer Lussky's opinion that he was intoxicated was based on tests conducted at the accident scene in less than ideal conditions to render a valid opinion on intoxication.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) When presented with a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.) It is the jury's responsibility to resolve any factual disputes, to assess the credibility of the witnesses, and to determine the sufficiency of the evidence for a verdict of guilt. (*People v. Bradford* (1985), 106 Ill. 2d 492, 502, 478 N.E.2d 1341.) Furthermore, testimony of the arresting officer alone is sufficient, if credible, to sustain a conviction for driving under the influence of alcohol. See *People v. Foley* (1987), 152 Ill. App. 3d 354, 357, 504 N.E.2d 254.

Here, the evidence was conflicting on the DUI charge. While defendant, his wife, and several friends said defendant was not intoxicated, Officer Lussky was of the opinion that defendant was intoxicated based on the odor of alcohol on his breath, his responses to her questions, and his watery eyes. Her opinion was confirmed by his inadequate performance of certain field sobriety tests. The State does not rely on Ms. Rotterman's testimony of his blood-alcohol concentration, and, because the jury might have disregarded it entirely yet still found sufficient other evidence to find defendant guilty of DUI (see *People v. Foley* (1987), 152 Ill. App. 3d 354, 357, 504 N.E.2d 254), we do not consider that evidence.

■ Considering the circumstances that defendant was in a tavern for approximately six hours immediately before the occurrence and admittedly consumed five eight-ounce draft beers and that Officer Lussky believed defendant to be intoxicated, we find there was sufficient evidence to justify the jury's guilty verdict for that offense. We also consider that there is sufficient evidence, if believed by the jury under proper instructions, to sustain a conviction for leaving the scene of an accident. As we conclude defendant was entitled to have the jury instructed as to the defense of necessity, the conviction for that offense must be reversed, and the cause will be remanded for a new trial.

Affirmed in part; reversed in part and remanded.

WOODWARD, J., concurs.

JUSTICE REINHARD, dissenting in part:

For the following reasons, I respectfully dissent from that part of the opinion which finds that the trial court erred in refusing to instruct the jury on the affirmative defense of necessity. In my view, the majority, under the facts of this case, has confused the availability of the affirmative defense of necessity with defendant's actual defense that he did not know he was involved in an accident or collision.

Defendant was charged, *inter alia*, with leaving the scene of an accident pursuant to section 11—401(a) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—401(a)). This section imposes upon the driver a duty to render aid and to provide specified information to the victims of the accident. (*People v. Nunn* (1979), 77 Ill. 2d 243, 247, 396 N.E.2d 27; see Ill. Rev. Stat. 1985, ch. 95½, par. 11—403.) To show a violation of section 11—401(a), the prosecution is required to prove that the accused had knowledge that the vehicle he was driv-

ing was involved in an accident or collision. *Nunn*, 77 Ill. 2d at 252, 396 N.E.2d at 31.

Defendant's limited trial testimony of the cause of this occurrence was that he believed "somebody had thrown something at me and that I had to get out of there and go home and call the police." This is not evidence of an accident or collision for which he had the duty to stop pursuant to section 11—401(a). Rather, these facts would tend to establish that someone, in an act of vandalism, had thrown something at his vehicle. In this situation, there has been no accident or collision for which defendant had any duty to stop and render aid or information. Accordingly, the affirmative defense of necessity, which involves the choice between two admitted evils (*People v. Unger* (1977), 66 Ill. 2d 333, 340, 362 N.E.2d 319), is inapplicable as defendant's conduct in leaving the scene of the occurrence, under these circumstances, would not be an offense.

Instead, defendant's trial testimony that he believed someone had thrown something at him and that he went home to call the police is consistent with a defense that he did not know he was involved in an accident or collision and was justified in going home and calling the police to report the incident. The State is required to prove defendant knew he was in an accident or collision. (*Nunn*, 77 Ill. 2d at 252, 396 N.E.2d at 31.) In my opinion, defendant's testimony refutes this element of the offense rather than establishes the affirmative defense of necessity, which would involve defendant knowing he was in an accident, yet leaving the scene reasonably believing that such conduct was necessary to avoid an injury greater than that resulting from his own conduct. There is no evidence that defendant believed he had a duty to stop under these circumstances. The necessity defense involves an assertion that the conduct involved promotes some higher value than the value of literal compliance with the law. (See *People v. Planer* (1987), 161 Ill. App. 3d 938, 941-42, 515 N.E.2d 1042.) Simply put, defendant's testimony does not reflect that he was confronted with and made such a choice.

On this record, the trial court properly denied defendant's tendered instructions on the defense of necessity. (See *People v. Ballard* (1975), 59 Ill. 2d 580, 585, 322 N.E.2d 473.) The jury heard defendant's defense to this charge and rejected it. I would affirm the conviction for leaving the scene of an accident.