# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRUCE ALAN WEAVER,

        Defendant-Appellant.

UNPUBLISHED
May 19, 2016

No. 326468
Eaton Circuit Court
LC No. 14-020156-FC

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

        Defendant was convicted, following a jury trial, of armed robbery, MCL 750.529. He was sentenced as an habitual offender, fourth offense, MCL 769.12, to serve 20 to 40 years in prison. Defendant appeals as of right, and we affirm.

        Defendant was accused of robbing a Pizza Hut with a toy gun. He admitted to the robbery, but asserted that he was under duress due to threats of harm to himself and his family from drug dealers.

        Defendant first argues that the evidence was insufficient to convict him of armed robbery because it was insufficient to show that he did not act under duress. We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

        Due process[1] requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979). In determining whether the prosecutor has presented sufficient evidence to sustain a conviction, an appellate court is required to view the evidence in the light most favorable to the prosecutor to ascertain whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, when viewed in the light most favorable to the prosecution, are considered to determine

---

[1] US Const, Am XIV.

-1-

whether the evidence was sufficient to support the defendant's conviction. *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).

Duress is a common-law affirmative defense whereby a defendant admits having committed the charged crime, but attempts to justify, excuse, or mitigate it. *People v Lemons*, 454 Mich 234, 245, 246 n 15; 562 NW2d 447 (1997); *People v Dupree*, 284 Mich App 89, 99; 771 NW2d 470 (2009). A successful duress defense excuses a defendant from criminal responsibility because the defendant was compelled to commit the crime in order to avoid a greater harm threatened by another person. *Lemons*, 454 Mich at 246. "To merit an instruction on the affirmative defense of duress, a defendant must establish a prima facie case of the elements of duress." *People v McKinney*, 258 Mich App 157, 164; 670 NW2d 254 (2003).

A jury instruction on the affirmative defense of duress is appropriate if the defendant produces sufficient evidence that:

"A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm." [*People v Henderson*, 306 Mich App 1, 4-5; 854 NW2d 234 (2014), quoting *Lemons,* 454 Mich at 247.]

Once a defendant presents a prima facie case that he acted under duress, the burden of proof shifts to the prosecution to prove beyond a reasonable doubt that the defendant did not act under duress. *People v Terry*, 224 Mich App 447, 453-454; 569 NW2d 641 (1997).

Defendant asserted that he was compelled to commit the robbery in order to avoid being harmed by his drug suppliers. Defendant explained that he owed $1,050 to his drug suppliers that he was supposed to pay at the beginning of May 2014, that his drug suppliers demanded payment on April 16, 2014, and that he was able to avoid them until April 19, 2014, the day before the robbery. Defendant said that the drug suppliers arrived at his home on April 19 and displayed a gun while threatening to kill him and his family for non-payment. Defendant described being afraid because he thought the drug dealers were going to kill him or his family or friends, and explained that he therefore attempted to rob the restaurant. Accordingly, the trial court provided a jury instruction on duress.

However, for the duress defense to succeed, the threat compelling the defendant's conduct must be "present, imminent, and impending," rather than a threat of future injury. *Henderson*, 306 Mich App at 5 (citations and quotation marks omitted). While "a mere threat of future injury is not enough to serve as such a defense, the issue of whether the alleged danger was immediate or imminent is, in all but the clearest cases, to be decided by the trier of fact

taking into consideration all the surrounding circumstances, including the defendant's opportunity and ability to avoid the feared harm." *People v Harmon*, 53 Mich App 482 486; 220 NW2d 212 (1974), aff'd 394 Mich 625 (1975); see also *People v Luther*, 394 Mich 619, 622; 232 NW2d 184 (1975). Here, while defendant may have believed that he and his family were vulnerable and that the threat was likely to be carried out on the night of the robbery if he did not pay the debt, there was no testimony regarding the whereabouts of the drug suppliers at that time, defendant stated that he thought he had to have the money the day following the threat and yet spent the day and evening celebrating Easter with his family before the nearly 10 p.m. robbery, and defendant remained in the community attempting to secure money to pay the debt for nine days after the robbery, until his arrest. The jury could reasonably have inferred from this evidence that defendant faced a future threat and did not, in accordance with the trial court's instructions, face fear at the time he acted.

Further, the threat to defendant and his family must have materialized "without the negligence or fault of the person who insists upon it as a defense." *People v Chapo*, 283 Mich App 360, 371-372; 770 NW2d 68 (2009). Defendant explained that he was threatened due to a debt he incurred as a result of his use of drugs supplied by those who threatened him. Additionally, defendant did not accept a $500 loan that was offered to him from a cash advance business, and considered but did not pursue loans from other businesses, family, or friends before searching for a business from which to steal. Further, defendant did not attempt to flee, as he reported two of his friends did when they were threatened. Finally, defendant did not ask the police to protect him or his family after he was threatened. This evidence was sufficient for the jury to have concluded that defendant was at fault for the debt that was incurred and not addressed, which produced the pressure of the threat that was directed at him and his family, and that he was therefore not absolved of responsibility for the robbery owing to the defense of duress.

Next, defendant argues that the performance of his first trial attorney was ineffective because he failed to interview two possible witnesses. Defendant did not raise this issue below. Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008).

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This right to counsel encompasses the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel a defendant must show (1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error or errors, the result of the proceedings would have been different. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706. The defendant must also show that the result of the proceedings was fundamentally unfair or unreliable. *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

An attorney's performance is deficient if it fell below an objective standard of professional reasonableness. *Jordan*, 275 Mich App at 667. Here, defendant argues that the performance of his first trial counsel was deficient in that he failed to interview possible witnesses Maria Coulson and Wanda Cartwright. His motion to withdraw as counsel was granted more than five months before trial after he explained to the trial court that he had refused defendant's suggestion to contact his drug-related friends "for a variety of reasons, primarily safety reasons," because the friends were at a drug house.

"Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). Defense counsel's duty is to prepare, investigate, and present all substantial defenses. *In re Ayres,* 239 Mich App 8, 22; 608 NW2d 132 (1999). Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). In order to overcome the presumption of sound trial strategy, the defendant must show that trial counsel's failure to prepare for trial or interview witnesses resulted in counsel's ignorance of valuable evidence that would have substantially benefited the accused. *People v Bass*, 223 Mich App 241, 253; 581 NW2d 1 (1997), vac in part on other grounds 457 Mich 866 (1998).

Defendant argues that the safety of counsel does not trump the duty to investigate. However, even if his first attorney failed to investigate, defendant has not explained how this could have affected the outcome of his trial where he was subsequently appointed another attorney. The outcome would only have been affected if his second attorney failed to investigate and this fell below an objective standard of reasonableness that affected the outcome. Defendant may be suggesting that it was impossible to interview the potential witnesses after his first attorney was replaced. However, defendant does not explain, and the record does not indicate, that the potential witnesses were available to the first attorney and not his subsequent trial counsel. Defendant testified that the potential witnesses left town, but he does not specify when this occurred for either witness and does not state that they fled only after the first attorney was replaced. Defendant did not state during the motion to withdraw that it would be impossible for subsequent trial counsel to interview the potential witnesses.

Defendant does not discuss whether his subsequent trial counsel interviewed the witnesses or whether he exercised reasonable professional judgment in not investigating them. Because trial counsel questioned defendant about the potential witnesses at trial, it is unlikely that counsel was ignorant of whatever information the potential witnesses had that could have benefitted defendant. Further, defendant testified that the potential witnesses fled town in fear of the drug suppliers, so it is not clear that the potential witnesses would have been available, or whether they would have been willing to testify about their resulting debt from purchasing narcotics from the drug suppliers that threatened them. On this record, it is impossible to determine whether these witnesses might have had an effect on the outcome of the trial because defendant has not provided affidavits from them outlining what their testimony would have been.

Moreover, even if original counsel's decision not to interview the witnesses could be viewed as unreasonable, there is no indication whether the subsequent attorney was able to find them or whether he failed to interview them or whether his decision not to call them as witnesses was an unsound trial strategy. If he found them and interviewed them, he likely concluded that

they would not be beneficial to the defense. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we will not second-guess with the benefit of hindsight. Further, the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (citations and quotation marks omitted). A substantial defense is one that might have made a difference in the outcome of the trial. *Chapo*, 283 Mich App at 371.

Defendant testified that Coulson and Cartwright were women that he took drugs with, and that they were threatened by the drug suppliers due to their debt around the same time of the threat to defendant. Defendant stated that his friends left town due to fears of the drug suppliers, but also that he stayed with them between his crime and arrest. Thus, defendant informed the jury that his friends were similarly situated and also in fear of harm due to threats and drug debts. Defendant was not deprived of his defense of duress because his friends were not called to testify. Defendant provided extensive testimony regarding his state of mind leading to the crime and elaborated on his theory that he had to commit the crime to prevent harm to himself and his family during his testimony and in closing argument. The testimony of his friends would have apparently been cumulative to defendant's testimony.

Even if defendant could show that counsel's performance was deficient, he has not established prejudice. Defendant acknowledged that he committed the crime, and he explained his reasons for the decision. Cumulative testimony that his drug dealers were also threatening others with violence due to their debts would likely not have changed the jury's determination that defendant was not excused from committing the crime under the circumstances. Presuming that the testimony would have reinforced the evidence that defendant was also threatened, it would not have established that the situation arose from something other than defendant's illegal conduct.

Next, defendant argues that the trial court erred by instructing the jury that a defense of duress only applies in situations that "did not arise because of the defendant's fault or negligence." The Court reviews claims of instructional error de novo. *People v Perez*, 469 Mich 415, 418; 670 NW2d 655 (2003). Jury instructions are reviewed in their entirety to determine if there is error requiring reversal. *People v McFall*, 224 Mich App 403, 412-413; 569 NW2d 828 (1997). A criminal defendant has the right to have a properly instructed jury consider the evidence against him. *People v Mills*, 450 Mich 61, 80; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). The trial court is required to instruct the jury with the law applicable to the case and fully and fairly present the case to the jury in an understandable manner. *Id*.

Here, the trial court inserted the instruction, "[T]he situation did not arise because of the defendant's fault or negligence," as one of the included elements of a duress defense. Defendant argues that the trial court erred in giving the instruction because there was no evidence that he committed the armed robbery due to his own fault or negligence. He asserts that " '[f]ault or negligence' must mean that a defendant has not done something reasonably close in time to the offense with which they are charged. [Defendant]'s purchase of drugs on several occasions was not 'fault or negligence' in that sense." However, there was ample evidence that defendant's behavior produced the source of his distress because he was threatened due to a debt he incurred

-5-

as a result of his use of drugs supplied by those who threatened him, he did not accept a $500 loan that was offered to him and did not pursue loans from others, did not attempt to flee, and did not ask the police to protect him after he was threatened. Thus, the evidence supported the instruction provided by the trial court. Additionally, none of the authority cited by defendant modifies or abrogates the common-law principal that the duress defendant experienced, in order to excuse his conduct, must have materialized without his negligence or fault. *Chapo*, 283 Mich App at 371-372.

Next, defendant argues that the trial court improperly based its sentence on defendant's refusal to admit guilt.[2] " 'A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt.' " *People v Payne*, 285 Mich App 181, 193-194; 774 NW2d 714 (2009), quoting *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). A defendant should not be penalized for exercising his constitutional right to a trial. *People v Mosko*, 190 Mich App 204, 211; 475 NW2d 866 (1991).

Here, the guidelines minimum sentence range was 108 months (9 years) to 30 years. At the sentencing hearing, defendant gave an apology to the victims of his crime and stated that he regretted it. Defendant then spoke about how he acted under threat from drug suppliers, and elaborated extensively about how his initial attorney's failure to obtain statements from two friends that were also threatened due to their drug debts affected his defense. Defendant concluded, "I can't guarantee it would have resulted in acquittal, but even so I can't get past the feeling that [the attorney's] lack of effort cost me the one and only chance I had."

The trial court revealed that, before defendant's statement, it was thinking that a sentence near the bottom end of the range was appropriate. The trial court then discussed the reasons for its minimum sentence, in relevant part:

> A few things I find very telling and concerning about what you've just said, you spent most of the time blaming somebody else for the reason that you were convicted by a jury.

> You started out, oh, I wish they were here, I can say I'm sorry, but now let me move on and tell you why [your first attorney] isn't a good attorney. . . . However, having sat through the trial and having talked to the jury afterwards, which both attorneys were afforded the same opportunity, I can tell you that that would have had no impact whatsoever on your conviction. Because the jury, like the court, was concerned that you did not seek assistance from anybody else to get this money that you needed before you chose to do what you chose to do.

\* \* \*

---

[2] We note that defendant does *not* raise other issues regarding sentencing or regarding the guidelines.

And, so, what you did was very scary.  You were a threat to the community.  You probably, in some ways, have altered those people's lives that they'll never recover from that type of trauma.  I know, I mean, I don't, personally, know how I would recover from thinking that somebody had a gun [and] was potentially going to shoot me.

* * *

Now, what you've said today basically is, none of this is my fault.  I was coerced, I was afraid, and [the attorney] didn't do his job.

* * *

I also don't believe that you – you've taken any responsibility.  From listening to your testimony in the courtroom, to listening to your elocution [sic] today, you, quite frankly, sir, have not taken responsibility.

[W]hat has been recommended by MDOC is a minimum of 20 years.  And that, under all the circumstances seems appropriate to me.

The Court examines three factors in order to determine whether the sentencing court improperly considered a defendant's refusal to admit guilt: " '(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe.' " *Payne*, 285 Mich App at 194, quoting *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987).  Where the sentencing court implicates the three factors, the " 'sentence was likely to have been improperly influenced by the defendant's persistence in his innocence.' " *Dobek*, 274 Mich App at 104, quoting *Wesley*, 428 Mich at 713.

Here, defendant did not fully assert his innocence, instead arguing that his crime should have been excused because he was under duress.  However, defendant did maintain that he could have been acquitted had the jury heard corroborating testimony that his friends had also been threatened.  Thus, there was some indication that defendant maintained that he was not guilty.  Secondly, as defendant acknowledges, there was no indication that the trial court attempted to have defendant admit his guilt.  Thirdly, defendant argues that the court explicitly stated that it would have issued a lesser sentence had defendant spoken differently during allocution.  However, a sentencing court may consider a defendant's lack of remorse in sentencing without impermissibly considering the defendant's failure to admit guilt.  *Dobek*, 274 Mich App at 104; *Wesley*, 428 Mich at 713-714.  Viewing the court's remarks in context, including its emphasis on the trauma imposed on the victims, the sentencing court did not indicate that it was defendant's lack of acknowledgment of guilt that was a consideration in increasing the minimum sentence, but defendant's lack of appreciation that his actions while under the threat caused harm to others.  Under the circumstances, we find no basis for resentencing.

Finally, in defendant's Standard 4 brief, Administrative Order No. 2004-6, Standard 4, he argues that his initial trial counsel provided ineffective assistance because he had a conflict of interest.  Because the function of defendant's trial counsel is to assist the defendant, " 'counsel

-7-

owes the client a duty of loyalty, a duty to avoid conflicts of interest . . . .' " *People v Pubrat*, 451 Mich 589, 603; 548 NW2d 595 (1996), quoting *Strickland v Washington,* 466 US 668, 688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The Michigan Rules of Professional Conduct provide that an attorney "shall not represent a client" if "the representation of that client will be directly adverse to another client" or "if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests," except in certain circumstances. MRPC 1.7.

Defendant argues that his initial trial counsel had a conflict of interest because his own interest in his personal safety was in conflict with his duty to contact possible witnesses for defendant. To establish that his trial counsel provided ineffective assistance due to a conflict of interest, defendant must demonstrate that an actual conflict of interest negatively impacted his attorney's performance. *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998). Thus, defendant has the burden of demonstrating two factors, that counsel actively represented competing interests and that the actual conflict of interest adversely affected his lawyer's performance. *Id*. at 557.

Here, the attorney plainly stated that his interest in his own safety was one of the factors in his decision not to contact the potential witnesses. Other factors influencing the decision to not contact the potential witnesses were not disclosed, and it was also not discussed whether there were methods of contacting the potential witnesses that would not be hazardous, such as telephone contact. Arguably, counsel could be viewed as having encountered a conflict. However, he did not "actively represent competing interests," and any conflict of interest did not "adversely affect his performance," because he withdrew from representing defendant in response to the conflict more than five months before the start of defendant's trial.

Additionally, defendant argues that he was denied the effective assistance of counsel when counsel did not pursue statements from the witnesses that would have corroborated his theory that he was acting under a serious threat from dangerous drug dealers when he decided to rob a business. However, the failure to interview the possible witnesses, or produce them, did not constitute ineffective assistance because it did not deprive defendant of his duress defense. Defendant acknowledges that his defense of duress was raised during the trial. Additionally, it is uncertain whether the potential witnesses were available or willing to provide the testimony about their drug debts. Defendant acknowledges that exhaustive searches by his family and trial and appellate attorneys had not resulted in locating the witnesses.

Finally, defendant cannot demonstrate that the failure to produce the witnesses prejudiced him. He acknowledged that he committed the crime and explained his reasons for the decision. Cumulative testimony that his drug dealers were also threatening others with violence due to their debts would likely not have changed the jury's determination that defendant was not excused from committing the crime because the threat was not present, imminent, and impending, or the threat did not materialize without the negligence or fault of defendant.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering