NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190475-U

NO. 4-19-0475

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 13, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Vermilion County |
| THOMAS KINDRED, | ) | No. 18CF514 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

---

JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held:*  (1) Assuming, *arguendo*, the trial court erred by (a) not allowing defendant to present evidence regarding his passenger's alleged threat and (b) not providing the jury with a "necessity" defense instruction, the errors were harmless beyond a reasonable doubt.

(2) The record does not establish defendant could not see the video evidence at his trial.

(3) Defendant failed to overcome the presumption his trial counsel made a reasonable strategic decision not to move to sever the trials on the charges in this case.

(4) The trial court did not err in considering the threat of harm to the community based on the circumstances in this case.

¶ 2    In May 2019, a jury found defendant guilty of unlawful possession of a weapon by a felon, two counts of aggravated fleeing, and driving on a revoked license. In July 2019, the trial court sentenced defendant to concurrent prison terms of seven years for unlawful possession of a

weapon by a felon and two years on each of the aggravated fleeing convictions. Defendant appeals, making the following arguments: (1) the trial court erroneously barred testimony which supported defendant's necessity and compulsion defenses and refused to instruct the jury as to defendant's necessity defense; (2) the court denied defendant his constitutional right to be present at all critical stages of his trial by preventing him from being able to see a video played for the jury; (3) defendant's trial counsel was constitutionally ineffective because he failed to file a motion to sever defendant's trial on the unlawful possession of a weapon by a felon charge from the aggravated fleeing charges; (4) the cumulative effect of the preceding issues deprived defendant of a fair trial; (5) the court denied defendant a fair sentencing hearing when it improperly considered an aggravating factor inherent in the offense of unlawful possession of a weapon by a felon; and (6) the court did not properly admonish the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4             On August 22, 2018, the State charged defendant by information with one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1 (West 2018)) and two counts of aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.1(a)(1), (4) (West 2018)). A grand jury later indicted defendant on the same charges. On January 18, 2019, while maintaining the State could not prove the charges against him beyond a reasonable doubt, defendant indicated he might assert affirmative defenses, including compulsion (720 ILCS 5/7-11 (West 2018)) and necessity (720 ILCS 5/7-13 (West 2018)).

¶ 5             Defendant's jury trial began on May 1, 2019. Outside the presence of the jury, the trial court indicated defendant and the State had agreed defendant would stipulate he was a prior convicted felon without further elaboration. The State agreed not to disclose to the jury the number

or nature of defendant's prior convictions. The court accepted the stipulation. After the parties made their opening statements, the State informed the jury defendant previously had been convicted of a felony offense.

¶ 6        Officer Kody Kidwell of the Danville police department testified he was working on August 21, 2018, as a regular patrol officer in a marked police vehicle. Another police officer, Officer Frahm, was riding in the patrol car with Kidwell. Around 2 a.m., Kidwell observed a vehicle without an operating rear registration light and initiated a traffic stop. After the suspect vehicle stopped, Officers Kidwell and Frahm exited the patrol car and started to approach the suspect vehicle. The suspect vehicle then fled the traffic stop. The officers retreated to the patrol vehicle and pursued the suspect vehicle for a number of miles. Ultimately, the suspect vehicle stopped, and Kidwell identified defendant as the driver. Jemario Webb, who was no longer living at the time of trial, was in the suspect vehicle's passenger seat.

¶ 7        The State introduced video footage from the patrol vehicle of the pursuit. Before the video was published to the jury, defense counsel asked the trial court, "Judge, can I move so that I can see the videos with my client?" The trial court responded, "No. You may move though."

¶ 8        Kidwell testified defendant committed multiple traffic infractions during the chase and almost hit a semi-trailer. Other officers tried to disable the suspect vehicle using "stop sticks," which defendant was able to avoid. At one point during the chase, Kidwell was driving over 80 miles per hour to keep pace with defendant. Defendant was not able to completely avoid a second set of "stop sticks" and eventually stopped after making several turns. When the vehicle stopped, defendant exited the car and ran away from the police officers. Webb then exited the vehicle on the passenger side. The officers initially did not know Webb was in the vehicle. The police ordered Webb to the ground, and he complied and was taken into custody. Kidwell noted Webb

was calm.  After the vehicle was searched, the officers released Webb.  During the search, the police found a loaded and operational firearm under the driver's seat.  Defendant was soon apprehended and brought back to the scene.  Kidwell issued him a number of citations, including a citation for driving on a revoked license.  The parties stipulated no DNA or fingerprints suitable for comparison were recovered from the firearm or the bullets.  Kidwell was the State's only witness.

¶ 9        Defendant testified on his own behalf.  According to his testimony, he immediately pulled over when he saw the police lights behind him.  Jermario Webb, who defendant had known for about four years, was in the vehicle with him.  After the initial stop, defendant looked to his right and saw Webb had a gun pointed at him.  Defense counsel asked defendant what Webb then said to him.  The State made a hearsay objection, which the trial court sustained.  Defense counsel told the court Webb's statement was being introduced for the effect it had on defendant, not for the truth of the matter asserted.  According to defense counsel, defendant needed to introduce Webb's statement for his necessity and compulsion defenses.  The court indicated the statement was still hearsay but allowed defendant to testify how he reacted to Webb.  Defense counsel asked for a sidebar to discuss the situation, but the court denied the request.  Defense counsel then asked defendant how he felt after he heard what Webb said.  Defendant said he was afraid for his life and the police officers' lives because Webb was not putting the firearm away as the officers approached.  Defendant testified he thought Webb was going to shoot him and/or a police officer.  According to defendant, he fled the scene because of what Webb said while he pointed the firearm at defendant.  Defendant claimed he was scared and did not know what Webb would do.

¶ 10        Defense counsel later asked the trial court if defendant could testify as to what Webb said to him.  Counsel again argued the statement was not being offered for the truth of the

matter asserted but only to show the effect the threat had on defendant. According to defense counsel, Webb's statement was legally significant, and his defense was negatively impacted by the court's hearsay ruling because the jury would not hear what Webb said or understand why defendant was afraid for himself and the police officers. The court responded defendant's defense made perfect sense because defendant testified Webb was pointing a gun at him.

¶ 11 As stated, defendant also was allowed to testify he was afraid Webb was going to shoot him and/or an officer approaching the vehicle based on what Webb said to him and the fact Webb was pointing a gun at him. When asked why he did not run from the vehicle, defendant said he could not because Webb had the gun and looked like he was ready to shoot. Defendant testified he ran from the police after the chase ended because he was afraid of Webb.

¶ 12 Outside the presence of the jury, defendant made a motion regarding his affirmative defenses of necessity and compulsion. The State objected to the necessity defense because defendant was to blame because he should not have been driving on a revoked license. The trial court allowed defendant's compulsion defense but denied the necessity defense.

¶ 13 After deliberating, the jury found defendant guilty of driving while his license was revoked, both counts of aggravated fleeing or attempting to elude a police officer, and unlawful possession of a weapon by a felon.

¶ 14 On July 2, 2019, the trial court sentenced defendant to concurrent prison sentences of seven years for unlawful possession of a weapon by a felon and two years for each count of aggravated fleeing or attempting to elude a police officer. After imposing these sentences, the court moved on to the driving with a revoked license charge, stating, "I am just simply entering a conviction on that case."

¶ 15 This appeal followed.

¶ 16 II. ANALYSIS

¶ 17 A. Hearsay and Jury Instructions

¶ 18 Defendant sought to present two affirmative defenses, necessity and compulsion, to the aggravated fleeing charges by asserting he fled the scene of the initial stop because Jermario Webb was pointing a gun at him and threatening defendant and/or the police officers. The trial court sustained the State's hearsay objection when defendant tried to offer testimony as to a threat allegedly made by Webb. Defense counsel later told the court defendant would testify Webb told defendant, "it's either you or [the officer]." Although the trial court did not permit defendant to testify to Webb's exact threat, the court did allow defendant to testify Webb had a gun pointed at him and defendant believed Webb was going to shoot defendant and/or a police officer, which was why he fled the scene after initially stopping.

¶ 19 Defendant argues the trial court erred in sustaining the State's hearsay objection to Webb's alleged threat because he did not want to introduce Webb's statement for the truth of the matter asserted, *i.e.*, that Webb was actually going to shoot either defendant or one of the approaching police officers. Instead, defendant argued he only wanted the jury to hear what Webb said so it would understand why defendant fled the scene. In other words, defendant wanted the jury to hear this evidence so it would consider the effect the statement had on defendant. Defendant also argued Webb's statement had independent legal significance for his affirmative defenses and the trial court erred by barring defendant's "necessity" affirmative defense. According to his brief, when the trial court barred both evidence of Webb's threat and the "necessity" defense instruction, defendant could not present his full defense to the jury. Defendant argues each of these errors require this court to reverse and remand for a new trial.

¶ 20 1. *Webb's Statement*

¶ 21 We first look at the trial court's ruling not to allow evidence of what Webb allegedly said while pointing a gun at defendant. Defendant cites *People v. Weatherspoon*, 394 Ill. App. 3d 839, 850, 915 N.E.2d 761, 771-72 (2009), for the proposition an out-of-court statement offered for a purpose other than establishing the truth of the matter asserted is not hearsay and may be introduced to (1) establish the effect it had on someone who heard the statement and (2) explain why the individual who heard the statement acted in a particular manner. In addition, citing *People v. Quick*, 236 Ill. App. 3d 446, 451-52, 603 N.E.2d 53, 57 (1992), and *People v. Kline*, 90 Ill. App. 3d 1008, 1011-12, 414 N.E.2d 141, 144-45 (1980), defendant argues a person raising a necessity defense or other affirmative defense may testify to out-of-court statements that are probative of defendant's state of mind during the incident in question. According to defendant, the prohibition of this evidence denied him his constitutional right to present a defense.

¶ 22 We need not extensively discuss the merits of defendant's argument here. Even assuming, *arguendo*, the trial court abused its discretion by not allowing defendant to introduce the specific words Webb used to threaten defendant, we find the error was harmless. In considering whether an error is harmless, courts must balance the societal interests in judicial economy and finality against a defendant's interest in an error-free trial. *People v. Mullins*, 242 Ill. 2d 1, 23, 949 N.E.2d 611, 624 (2011). Structural errors, such as a complete denial of counsel or trial by a biased judge or jury, are not subject to harmless-error review. *Mullins*, 242 Ill. 2d at 22, 949 N.E.2d at 624. An error cannot be considered harmless unless it can be shown beyond a reasonable doubt that the constitutional error did not affect the trial's outcome. *Mullins*, 242 Ill. 2d at 23, 949 N.E.2d at 624. Simply stated, an error is harmless if an examination of the record shows the defendant would have still been found guilty had the error not occurred. *Mullins*, 242 Ill. 2d at 23, 949 N.E.2d at 625.

¶ 23    Here, defendant was able to testify he fled the scene because Webb was pointing a gun at him and defendant believed Webb was going to shoot him and/or a police officer because of a statement made by Webb. The jury heard this evidence. The jurors clearly did not find defendant's testimony to be credible. Based on this record, any error in precluding the jury from hearing the specific words Webb allegedly used while threatening defendant would not have changed the outcome of the trial.

¶ 24                              2. *Necessity Jury Instruction*

¶ 25    We next address defendant's argument the trial court erred by denying defendant's request to provide the jury with a "necessity" defense instruction. A defendant is "entitled to appropriate instructions which present [his] theories of the case to the jury when and if such theories are supported by the evidence." *People v. Unger*, 66 Ill. 2d 333, 338, 362 N.E.2d 319, 321 (1977). Defendant asked the court to provide both necessity and compulsion defense instructions as to both aggravated fleeing charges. According to defendant, the instruction should have been given because he presented evidence he believed he had to flee the traffic stop to avoid his death and/or the death of a police officer approaching his vehicle during the initial stop.

¶ 26    In *Unger*, 66 Ill. 2d at 341, 362 N.E.2d at 322, the supreme court held a necessity defense and a compulsion defense are "theoretically distinct." Necessity is defined by statute as follows: "Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." 720 ILCS 5/7-13 (West 2018).

¶ 27    The defendant in *Unger* argued he should have been able to rely on a necessity defense to his prison escape charge because he testified (1) he had been subjected to threats of

forced homosexual activity and had been the victim of the threatened abuse, (2) he was not physically capable of defending himself, and (3) he feared he would suffer greater harm if he reported the threats and abuse to prison officials. *Unger*, 66 Ill. 2d at 341, 362 N.E.2d at 322-23. The defendant also testified he was told he was going to be killed just prior to his escape, and he fled the prison to save his own life. *Unger*, 66 Ill. 2d at 341, 362 N.E.2d at 323. Our supreme court held the defendant's "necessity" instruction should have been given. According to the court:

> "In our view, the defense of necessity, as defined by our statute (Ill. Rev. Stat. 1971, ch. 38, par. 7-13), is the appropriate defense in the present case. In a very real sense, the defendant here was not deprived of his free will by the threat of imminent physical harm which, according to the Committee Comments, appears to be the intended interpretation of the defense of compulsion as set out in section 7-11 of the Criminal Code. (Ill. Ann. Stat., ch. 38, par. 7-11, Committee Comments, at 423-33 (Smith-Hurd 1972)). Rather, if defendant's testimony is believed, he was forced to choose between two admitted evils by the situation which arose from actual and threatened [sexual] assaults and fears of reprisal. *Though the defense of compulsion would be applicable in the unlikely event that a prisoner was coerced by the threat of imminent physical harm to perform the specific act of escape, no such situation is involved in the present appeal.*" (Emphasis added.) *Unger*, 66 Ill. 2d at 340-41, 362 N.E.2d at 322.

¶ 28          In this case, defendant makes a compelling argument the trial court erred in not giving the "necessity" instruction. However, even assuming, *arguendo*, the trial court erred by not giving the instruction, the error was harmless beyond a reasonable doubt because, unlike in *Unger*, the jury here was given a "compulsion" defense instruction based on defendant's testimony

regarding Webb's threatening behavior and defendant's reaction to it. As stated earlier, the jury obviously did not find defendant's testimony credible. As a result, even if the jury had been given the "necessity" defense instruction, the outcome of this case would have been the same.

¶ 29                                B. Right to be Present

¶ 30        Defendant next argues his constitutional right to be present at all critical stages of his trial was violated because the trial court prevented him from being able to see a video played for the jury which affected the fundamental fairness of his trial. According to defendant's brief to this court:

> "Defense counsel asked if he and [defendant] could move to see the video, and the trial court refused. [Citation.] This inability to see the video prevented [defendant] from being fully present and able to assist his attorney with his defense. [Defendant's] inability to see the evidence that was ultimately offered as substantive evidence against him affected the fundamental fairness of his trial."

Defendant acknowledges he did not preserve this argument but asks this court to review the alleged error under the second prong of the plain-error analysis.

¶ 31        Our supreme court has traditionally identified two situations where it is appropriate to excuse a forfeiture: (1) when a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) when a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675. Generally, the first step of any plain error analysis is determining whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49.

¶ 32    Contrary to defendant's assertion he could not see the video at the trial, the record in this case does not clearly show this is accurate. Defense counsel asked the trial court, "Judge, can I move so that I can see the videos with my client?" The court responded, "No. You may move though." Based on this brief exchange, it is not clear defendant could not see the videos played at the trial. Further, it is not clear if defense counsel moved. Even assuming defense counsel did move, it is not clear where he moved in relation to defendant's position in the courtroom. As a result, the record does not establish the trial court made the error of which defendant complains, *i.e.,* not allowing defendant to view video evidence introduced against him.

¶ 33                    C. Ineffective Assistance of Counsel

¶ 34    Defendant next argues his trial counsel was ineffective because he did not move to sever defendant's trial on the unlawful possession of a weapon by a felon charge from his trial on the aggravated fleeing charges. To establish ineffective assistance of counsel, defendant must show (1) counsel's representation fell below an objective standard of reasonableness which (2) prejudiced defendant. *Strickland v. Washington*, 466 U.S. 668, 690-694 (1984). An attorney's ineffectiveness is prejudicial if a reasonable probability exists the result of the proceeding would have been different absent the ineffective assistance of counsel. *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the case. *Strickland*, 466 U.S. at 694.

¶ 35    While the State can pursue multiple charges in a single prosecution, a defendant can ask for the charges to be separated into multiple trials if he would be prejudiced by having to defend against the multiple charges in a single trial. 725 ILCS 5/114-8 (West 2018). Here, defense counsel did not request separate trials.

¶ 36    "Generally, a defense decision not to seek a severance, although it may prove

- 11 -

unwise in hindsight, is regarded as a matter of trial strategy." *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 24, 75 N.E.3d 503. The First District in *Fields* stated:

> "[W]hen deciding whether to seek a severance, defense counsel may choose to pursue an 'all or nothing' trial strategy, in which the defendant is acquitted or convicted of all charges in a single proceeding. Illinois case law endorses the 'all-or-nothing' strategy in other situations, such as where the defense decides to forego the fact finder's consideration of lesser included offenses. [Citation.] The mere fact that an 'all-or-nothing' strategy proved unsuccessful does not mean counsel performed unreasonably and rendered ineffective assistance." *Fields*, 2017 IL App (1st) 110311-B, ¶ 28.

The First District also noted any prejudice the defendant might have suffered by the jury hearing the defendant was a convicted felon was mitigated in the case because the parties stipulated the jury would only learn the mere fact of the defendant's prior conviction without hearing any specifics of the prior conviction. The court noted defense counsel "may have believed that the odds of getting two acquittals were greater in one proceeding, rather than two proceedings." As a result, the defendant failed to overcome the strong presumption his attorney's action or inaction resulted from sound trial strategy. *Fields*, 2017 IL App (1st) 110311-B, ¶ 28.

¶ 37    Based on this record, defendant has failed to overcome the presumption his trial counsel made an "all or nothing" strategic decision not to move to sever the charges. The State concedes defendant's prior felony conviction, which was used to establish an element of the unlawful possession of a weapon by a felon charge, would have been inadmissible in a trial on just the aggravated fleeing counts because of the 10-year time limitation adopted by our supreme court in *People v. Montgomery*, 47 Ill. 2d 510, 516, 519, 268 N.E.2d 695, 698, 700 (1971). However,

this does not establish defense counsel was ineffective. While defense counsel's decision not to move to sever the charges carried the possibility of prejudicing the jury on the aggravated fleeing charges because a jury in a separate trial on the aggravated fleeing charges would not have learned about defendant's prior felony conviction, we note many strategic decisions carry the possibility of prejudice. As in *Fields*, defense counsel was able to mitigate any prejudice by entering the stipulation which kept the jury from learning what felony defendant committed.

¶ 38                                D. Cumulative Errors

¶ 39        Defendant next argues the cumulative effect of the alleged errors he raised in the prior arguments deprived him of a fair trial. Because we have determined the record neither establishes (1) defendant could not see the video evidence when it was played for the jury nor (2) defense counsel's assistance was constitutionally ineffective, defendant's argument fails. We need not address it further.

¶ 40                             E. Defendant's Sentence

¶ 41        Defendant also argues his sentence for unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1 (West 2018)) resulted from an impermissible double enhancement. "A double enhancement occurs when (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed or (2) the same factor is used twice to elevate the severity of the offense itself." *People v. Garcia*, 2018 IL App (4th) 170339, ¶ 29, 99 N.E.3d 571.

¶ 42        As noted in defendant's brief, the State was required to prove defendant knowingly possessed a weapon and was a convicted felon to find him guilty of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1 (West 2018)). Because a weapon is inherently dangerous, defendant argues it is presumed the legislature took this into account when it determined the

penalty range for the offense. However, according to defendant, the trial court imposed a seven-year sentence on this charge in part because defendant's conduct threatened the community with serious harm, which defendant argues was an improper double enhancement.

¶ 43 Defendant concedes he forfeited this argument on appeal because he did not raise the issue in the trial court. However, he asks us to review the issue pursuant to the plain error doctrine. Generally, as previously noted, the first step in a plain error analysis is to determine whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49. Based on the record, the trial court did not commit a clear and obvious error when it sentenced defendant.

¶ 44 The trial court did not make lengthy comments when it sentenced defendant but did state the following:

"When I look at the factors in aggravation, I find that the defendant's conduct caused or threatened serious harm, that the defendant has a history of prior delinquency or criminal activity, and I guess most importantly, that the sentence is necessary to deter others from committing the same crime. Based on the jury's verdict and the rejection of the affirmative defenses and the—and your actions in the commission of this crime, the factor regarding the deterrence of others committing the same crime is the one that stands out in my mind.

As [the State] has indicated, and as [defense counsel] agreed, the amount of gun violence in this community is at peak level. It is excessive; it is disgusting. Many, many people are getting hurt. Our community is basically a wreck because of the gun violence in this community. And so I feel it's extremely important for me to send a strong message to anyone who's anywhere near a gun that I'm not going to tolerate it. I'm going to send a strong message that I am not going to

tolerate it."

The court then sentenced defendant to seven years in prison for unlawful possession of a weapon by a felon and concurrent two year terms for his aggravated fleeing offenses.

¶ 45　　　　Our state constitution states "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court has broad discretionary powers when selecting an appropriate sentence." *Garcia*, 2018 IL App (4th) 170339, ¶ 37. A trial court must impose a sentence based on the particular circumstances of a case, including (1) the defendant's history, character, and rehabilitative potential, (2) the seriousness of the crime, (3) the need to protect society, and (4) the need for punishment and deterrence. *Garcia*, 2018 IL App (4th) 170339, ¶ 37. A defendant bears the burden of establishing his sentence was based on an improper factor. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 65, 129 N.E.3d 755. Based on the trial court's comments in sentencing defendant, defendant has not established his sentence resulted from an improper double enhancement.

¶ 46　　　　This court has held a sentencing court can treat a defendant's conduct as an aggravating factor if the conduct threatened or caused serious harm. When determining whether a defendant threatened serious harm, the sentencing court compares the defendant's conduct against the minimum conduct necessary to commit the offense. An offense may be committed in a wide variety of ways, with varying degrees of threatened or actual harm. As a result, a sentencing court must focus on the degree or gravity of the defendant's conduct. *Hibbler*, 2019 IL App (4th) 160897, ¶ 67.

¶ 47　　　　To be convicted of unlawful possession of a weapon by a felon, a defendant need not be in possession of a firearm. Instead, many items much less dangerous than a firearm qualify

as a weapon under section 24-1.1 of the Criminal Code of 2012 (720 ILCS 5/24-1.1 (West 2018)), including "any bludgeon, black-jack, slung-shot, sand-bag, metal knuckles or other knuckle weapon regardless of its composition, throwing star, *** switchblade knife, *** or a ballistic knife[.]" 720 ILCS 5/24-1, 1.1 (West 2018). Had defendant possessed any of these items instead of a firearm, the sentencing range for the offense would have still been the same, not less than 2 years and not more than 10 years in prison. 720 ILCS 5/24-1.1(a), (e) (West 2018). As a result, the trial court did not err in considering the degree of threatened harm to the community which resulted from defendant's possession of a firearm, a more dangerous weapon than those previously listed, in sentencing defendant within the applicable sentencing range.

¶ 48                                    F. Jury Admonishments

¶ 49         In his initial brief to this court, defendant argued the trial court erred in the manner it admonished the potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012). However, in his reply brief, defendant withdrew his argument pursuant to our supreme court's decision in *People v. Birge*, 2021 IL 125644. As a result, we will not address this issue further.

¶ 50                                    III. CONCLUSION

¶ 51         For the reasons stated, we affirm the trial court's judgment.

¶ 52         Affirmed.